Dahlstrom v. Brazos County 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-004-CV

Â Â Â Â Â KARL L. DAHLSTROM, ET AL.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellants
Â Â Â Â Â v.

Â Â Â Â Â BRAZOS COUNTY, ET AL.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellees
 

From the 361st District Court
Brazos County, Texas
Trial Court # 43,470-361
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â In a petition filed May 3, 1996, Brazos County and the City of Bryan sued Karl Dahlstrom
for $3,146.23 in delinquent "taxes, penalties, and interest" that Dahlstrom allegedly owed for real
property he owns in Brazos County. The Bryan Independent School District and the Brazos
County Education District were impleaded in the lawsuit so that they could assert their claims, if
any, to the monies Dahlstrom allegedly owed. On June 5, the Bryan Independent School District
and the "Successor in Interest to the Brazos County Independent School District" filed an original
plea in intervention and a cross-claim, contending that Dahlstrom owed them $6,958.64 in taxes,
penalties, interest, and attorneys' fees from the property at issue. On August 8, the United States
of America filed an answer to the original petition, admitting as was alleged that it possessed a tax
lien on Dahlstrom's Brazos County property.
Â Â Â Â Â Â On November 8, 1996, the trial court signed a default judgment in the amount of $13,282.04
in favor of Brazos County, the City of Bryan, the Bryan Independent School District, and the
Brazos County Education District. On December 6 Dahlstrom filed a pro se notice of appeal.
Â Â Â Â Â Â Perfection of an appeal is required to invoke our jurisdiction. Welch v. McDougal, 876
S.W.2d 218, 220-22 (Tex. App.âAmarillo 1994, writ denied); El Paso Sharky's Billiard Parlor,
Inc. v. Amparan, 831 S.W.2d 3, 5 (Tex. App.âEl Paso 1992, writ denied). Because Dahlstrom
is not exempt from paying the costs on appeal, he is required to file either a cost bond, a cash
deposit, or an affidavit of inability to pay costs to perfect this appeal. Tex. Civ. Prac. & Rem.
Code Ann. Â§Â§ 6.01-6.03 (Vernon 1986 & Supp. 1997); Tex. R. App. P. 40(a)(1), (a)(3); White
v. Schiwetz, 793 S.W.2d 278, 279 (Tex. App.âCorpus Christi 1990, no writ). A notice of appeal
generally is not a proper instrument by which one may perfect an appeal. See id.
Â Â Â Â Â Â On January 2, 1997, we notified Dahlstrom by letter that his appeal did not appear to be
properly perfected and that he would have fifteen days to show sufficient grounds for continuing
the appeal. In a letter postmarked January 23, 1997, Dahlstrom enclosed what apparently is a
photocopy of a receipt from the Brazos County District Clerk issued to Dahlstrom to represent that
he paid a $1,000 cash deposit in lieu of appeal bond on January 23, 1997. On January 29 we
informed Dahlstrom that his letter was insufficient to demonstrate that his appeal had been timely
perfected. We have received no further correspondence from him.
Â Â Â Â Â Â Rule of Appellate Procedure 41(a)(1) provides, in relevant part, "When security for costs on
appeal is required, the bond or affidavit in lieu thereof shall be filed with the clerk within thirty
days after the judgment is signed, or, within ninety days after the judgment is signed if a timely
motion for new trial has been filed by any party[.]" Tex. R. App. P. 41(a)(1). There is no
indication in the record tendered to this court that Dahlstrom filed a motion for new trial or any
other instrument that might have extended the appellate timetable. Dahlstrom's perfection
instrument, pursuant to Rule 41(a)(1), was thus due on December 9, 1996.
Â Â Â Â Â Â We doubt whether we could consider the January 23, 1997, receipt that allegedly demonstrates
that Dahlstrom paid a cash deposit in lieu of bond on that date. See Tex. R. App. P. 51(a)
(indicating that the perfection instrument should be contained in the transcript). Nevertheless,
assuming that we could consider the January 23 receipt, Dahlstrom's cash deposit in lieu of bond
was filed over six weeks too late. Therefore, Dahlstrom's January 23 correspondence fails to
demonstrate that his appeal was properly perfected. See id.; Davies v. Massey, 561 S.W.2d 799,
800 (Tex. 1978); El Paso Sharky's v. Amparan, 831 S.W.2d 3, 5 (Tex. App.âEl Paso 1992, writ
denied); McDonald v. Newmyer, 775 S.W.2d 652, 653 (Tex. App.âHouston [1st Dist.] 1989,
writ denied).
Â Â Â Â Â Â Dahlstrom's notice of appeal filed on December 6 was filed within the thirty-day perfection
period. As indicated above, however, a notice of appeal is an ineffective perfection instrument. 
But, because Dahlstrom's notice of appeal was a bona fide effort to invoke our jurisdiction, we
have jurisdiction to allow him the opportunity to properly perfect his appeal. Linwood v. NCNB
Texas, 885 S.W.2d 102, 103 (Tex. 1994). In our January 2 letter correspondence with Dahlstrom
we informed him that his appeal did not appear to be perfected. See Tex. R. App. P. 60(a)(2). 
Apparently in response to this letter, Dahlstrom attempted to perfect his appeal by filing a cash
deposit in lieu of bond on January 23.
Â Â Â Â Â Â Dahlstrom's efforts, however, were untimely. In our January 2 letter, we allowed him fifteen
days to amend the record. Dahlstrom did not mail proof of his cash deposit in lieu of bond, again
assuming that we could consider the January 23 receipt from the Brazos County District Clerk,
until January 23, twenty-one days after our letter was sent. See Tex. R. Civ. P. 5.



Â Â Â Â Â Â We notified Dahlstrom that the transcript did not demonstrate that his appeal had been duly
perfected. Tex. R. App. P. 56(a), 60(a)(2). Even though given the opportunity to cure the defect,
he has failed to properly perfect this appeal. Id. 40(a)(1), 83. Thus, the transcript does not show
that this court has jurisdiction and "after notice it [has] not [been] amended." Id. 56(a).
Â Â Â Â Â Â Therefore, we dismiss this cause for want of jurisdiction. Id.
Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM

Before Chief Justice Davis, 
Â Â Â Â Â Â Justice Cummings and
Â Â Â Â Â Â Justice Vance
Dismissed for want of jurisdiction
Opinion delivered and filed February 26, 1997
Do not publish



e:EN-US;mso-bidi-language:AR-SA'>[3]
and without knowing Loredos counselÂs punishment-phase strategy.

We must adhere to the United States
Supreme Court's two-pronged Strickland
test to determine whether counsel's representation was so inadequate as to
violate a defendant's Sixth Amendment right to counsel. Â Strickland
v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674
(1984); Thompson v. State, 9 S.W.3d
808, 812 (Tex. Crim. App. 1999). The Strickland
test applies to the punishment phase of a noncapital case.Â  Hernandez
v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

Strickland requires a defendant to show that: (1)
counsel's representation fell below an objective standard of reasonableness and
(2) counsel's deficient performance prejudiced the defendant. Â Roe v.
Flores-Ortega, 528 U.S. 470, 476-77, 120 S.Ct. 1029, 1034, 145 L.Ed.2d
985 (2000); Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.Â  The assessment of whether a defendant
received ineffective assistance of counsel must be made according to the facts
of each case. Â Thompson, 9 S.W.3d at 813. Â The
appellant bears the burden of proving by a preponderance of the evidence that
counsel was ineffective.Â  Id.Â  A single
error can be so substantial that it causes the attorneyÂs assistance to fall
below the Sixth Amendment standard.Â  Id.

Entitled to Notice

Because Loredo is arguing that his
counsel was deficient in failing to request notice of the StateÂs intent to use
extraneous bad acts, we first ask whether he was entitled to the notice.Â  Jaubert
v. State, 74 S.W.3d 1, 2 (Tex. Crim. App.), cert. denied, 537 U.S. 1005 (2002).Â 
Because the State offered the evidence of extraneous bad acts in its
case-in-chief in the punishment phase, not during cross-examination or
rebuttal, Loredo was entitled to notice of these acts.Â  Id. at 4.




Objective Standard of
Reasonableness

When reviewing a claim of
ineffective assistance of counsel under the first prong of Strickland, there is a strong presumption that defense counsel's
conduct was reasonable and constituted sound trial strategy. Â Strickland,
466 U.S. at 689, 104 S.Ct. at 2065.Â  We evaluate the totality of the
representation from counsel's perspective at trial, rather than counsel's
isolated acts or omissions in hindsight. Â Gutierrez
v. State, 8 S.W.3d 739, 749 (Tex. App.ÂAustin 1999, no pet.). Â Appellant has the ultimate burden to overcome
this presumption and demonstrate not only that counsel's performance was
unreasonable under the prevailing professional norms, but that the challenged
action was not sound trial strategy. Â Id.

We have previously held that there
could be no strategic basis for not requesting notice under article 37.07 section
3(g).Â  Jaubert v. State, 65 S.W.3d 73, 81-82 (Tex. App.ÂWaco 2000), revÂd on other grounds by 74 S.W.3d 1
(Tex. Crim. App.), cert. denied, 537 U.S. 1005 (2002).[4]Â  ÂThe purpose of article 37.07 Â§ 3(g) is to
avoid unfair surprise, that is trial by ambush.ÂÂ  Chimney
v. State, 6 S.W.3d 681, 697 (Tex. App.ÂWaco 1999, no pet.).Â  Â[T]he purpose is to allow the defendant adequate
time to prepare for the StateÂs introduction of the [evidence] at trial.ÂÂ  Id. at 693-94.Â 
Because LoredoÂs counsel should not want to be ambushed with extraneous
bad acts introduced by the State at the punishment hearing, we find this
failure to request notice unreasonable and not justifiable by sound trial
strategy.Â  See Ex Parte Menchaca, 854 S.W.2d 128, 129 (Tex. Crim. App. 1993)
(finding counsel was ineffective in failing to file a motion in limine to
prohibit the introduction of a prior rape conviction in a trial for delivery of
a controlled substance); see also Autry
v. State, 27 S.W.3d 177, 182 (Tex. App.ÂSan Antonio 2000, pet. refÂd)
(Â[P]urposefully deciding not to request disclosure by the State of its intent
to introduce evidence of extraneous offenses may amount to questionable trial
strategy . . .Â).Â  Loredo has met his
burden to show that his counselÂs representation fell below an Âobjective
standard of reasonableness.ÂÂ  Strickland, 466 U.S. at 689, 104 S.Ct. at 2065; Jaubert, 65 S.W.3d at 82-83.

Prejudice

The second prong of Strickland requires a showing that
counsel's errors were so serious that they deprived the defendant of a fair
trial, i.e., a trial whose result is
reliable.Â  Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Mallet v. State, 9 S.W.3d 856, 866 (Tex. App.ÂFort Worth 2000, no pet.).Â  The appellant must show there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different.Â  Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. Â A reasonable probability is a probability
sufficient to undermine confidence in the outcome.Â  Id., at 669, at 2056.

During the StateÂs case-in-chief in
the punishment phase, the State introduced testimony of eight witnesses.Â  Three were law enforcement officers who
testified they were familiar with LoredoÂs bad reputation with regard to being
peaceful and law-abiding.

Another witness, Melissa Pick, the
mother of two of LoredoÂs children, testified that Appellant was not peaceful
and law-abiding.Â  She testified that
Loredo is a drug user.Â  She described one
incident where he stole money from her for drugs and she confronted him, which
lead to a fight with him Âpushing and slingingÂ her and then he held a knife to
her throat and threatened to kill her.Â 
She also testified that he punched her in the eye during labor with
their second child.Â  She testified that he
threw his dad over the dining room table after one of their fights.Â  She explained an incident where he punched
her in the eye one night and that she reported to the police.Â  Finally, she stated she left him because of
his violence and he no longer visited his children. Â The police officer, who took the report from
Melissa about being punched in the eye, testified consistently with MelissaÂs
testimony.Â  

Sabrina, the mother of LoredoÂs
third child, also testified that Loredo was not peaceful or law-abiding.Â  She testified that Loredo was a drug
user.Â  Sabrina described an incident
where Loredo punched her in the face and attempted to choke her when she was
eight months pregnant.Â  She testified about
another incident where Loredo pointed an AK-47 at her head while she was
holding their son and then started shooting the gun all around the room and then
punched her in the face.Â  She also testified
that Loredo grabbed her by the neck and hair at a dance and police officers had
to get Loredo off of her.Â  Two detectives
testified about this incident at the dance and stated that they arrested Loredo
for assault that night.Â  Additionally, Sabrina
described an assault on her and a sexual assault on Sally (a friend of theirs)
one evening when they were partying.Â  She
stated that she eventually left him.

On cross-examination, AppellantÂs
counsel did not ask any questions to four of the StateÂs witnesses and asked a
few questions to the other StateÂs witnesses.Â 
During rebuttal, AppellantÂs counsel called Sally, and she testified
that Loredo did not sexually assault her.Â 
LoredoÂs counsel also called LoredoÂs mother who testified that Loredo
did not own an AK-47, and Loredo did not throw his father (her husband) across
a dining room table.Â  She also testified
that Sabrina would have reason to lie because she resented Loredo for having
sole possession of their son for an extensive period of time after she left him.

During rebuttal by the State, an
officer testified that he responded to the call where Loredo allegedly assaulted
Sabrina and sexually assaulted Sally.Â  He
testified consistently with the description provided by Sabrina.Â  On further rebuttal, AppellantÂs counsel
called Alicia (a friend who was present the night of the assaults), and she
testified that Sabrina and Loredo were consuming cocaine that night and Loredo
did not try to Âmess withÂ Sally.Â  Alicia
stated that she did not speak to the police that night regarding what had
happened.Â  The State then recalled the
officer who responded the night of the alleged sexual assault and testified
that Alicia did tell him that Loredo wanted to f___ Sally and had been trying
to get her all day, which he documented in his report.

After hearing this testimony, the
jury assessed punishment at 30 yearsÂ imprisonment and no fine for each of the
three counts.Â  The maximum punishment for
each count was life imprisonment and a $10,000.00 fine.Â  Our review of the punishment phase of the
trial shows that LoredoÂs counsel appeared to have been prepared to rebut the
StateÂs evidence of the extraneous bad acts based on his immediate rebuttal
with Sally and LoredoÂs mother and later rebuttal with Alicia.Â  LoredoÂs counsel did not seem surprised by
any of the StateÂs witnesses.Â  There is
nothing in the record to indicate and Loredo does not argue that his counsel would
have taken different steps to rebut or object to the StateÂs evidence had he
received written notice of these extraneous bad acts.Â  See
Autry v. State, 27 S.W.3d 177, 182 (Tex. App.ÂSan Antonio 2000, pet. refÂd)
(Â[Appellant] has not stated what steps he would have taken if he had received
written notice of the State's intent to introduce extraneous evidence.Â).Â  There is also nothing in the record to
indicate that the jury might have assessed less than 30 years for each countÂbased
on the record, it is not reasonably probable that LoredoÂs sentence would have
been any less.Â  Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.Â  Therefore, we do not find that counselÂs
error was so serious that it deprived Loredo of a fair trial.Â  Id., at 687, at 2064.Â  This error was not of a magnitude significant
enough to render LoredoÂs counsel ineffective.Â 
Thompson, 9 S.W.3d at
813.Â  We overrule issue one.

UNCONSTITUTIONALITY OF TEXAS CODE
OF

CRIMINAL PROCEDURE ART. 42.08(A)

Â 

Loredo argues that article 42.08(a)
violates the constitutional delegation doctrine (principle of separation of
powers) because there are not sufficient or adequate guidelines for the trial
courtÂs exercise of its discretion in determining whether the sentences should
be cumulated or run concurrently.Â  See Tex.
Code Crim. Proc. Ann. art. 42.08(a) (Vernon Supp. 2004-2005).Â  Appellant properly preserved this issue in
his motion for new trial.Â  Tex. R. App. P. 33.1(a)(1).

When reviewing an attack on the
constitutionality of a statute, the appellate court begins with a presumption
that the statute is valid and the Legislature has not acted unreasonably or arbitrarily.Â  Luquis
v. State, 72 S.W.3d 355, 365 n.25 (Tex. Crim. App. 2002).Â  This presumption stands until the contrary is
shown beyond a reasonable doubt.Â  Williams v. State, 514 S.W.2d 772, 773
(Tex. Civ. App.ÂBeaumont 1974, writ refÂd n.r.e.) (citing Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424 (1946)).Â  The burden is on the party challenging the
statute to establish its unconstitutionality.Â 
Ex parte Ports, 21 S.W.3d 444,
446 (Tex. App.ÂSan Antonio 2000, pet. refÂd).

Loredo acknowledges that the Court
of Criminal Appeals has ruled that this statute is not an unconstitutional
delegation of authority.Â  See Johnson v. State, 492 S.W.2d 505,
506 (Tex. Crim. App. 1973); Hammond v.
State, 465 S.W.2d 748, 752
(Tex. Crim. App. 1971).Â  But he argues
that Johnson has been impliedly
overruled by Ex parte Granviel, 561
S.W.2d 503 (Tex. Crim. App. 1978) (en banc) (regarding the constitutionality of
Tex. Code Crim. Proc. Ann. art.
43.14 (1977)), and In re Johnson, 554
S.W.2d 775, 780-81 (Tex. Civ. App.ÂCorpus Christi 1977), writ refÂd n.r.e. per curiam, 569 S.W.2d 882 (Tex. 1978) (regarding the constitutionality of Tex. Rev. Civ. Stat. Ann. art. 2324
(1976)).Â  Neither Ex parte Granviel or In re
Johnson deal with the constitutionality of article 42.08; therefore we
disagree with Loredo that Johnson and
Hammond have been impliedly overruled.Â  Since there has been no change in article
42.08 that is material to this appeal since Johnson
and Hammond were decided, we are
bound by the Court of Criminal Appeals' holdings regarding its
constitutionality.Â  We overrule issue
two.

CONCLUSION

We overrule both of LoredoÂs issues.Â  Therefore, we affirm the judgment.

Â 

BILL VANCE

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Before Chief Justice Gray,

Â Â Â Â Â Â Â Â Â  Justice Vance, and

Â Â Â Â Â Â Â Â Â  Justice Reyna

Â Â Â Â Â Â Â Â Â  (Chief Justice Gray
concurring)

Affirmed

Opinion delivered and filed December
 8, 2004

Publish

[CRPM]











Â Â Â  [1]Â Â Â Â Â Â Â Â Â Â  The remaining two issues were not
decided.





Â Â Â  [2]Â Â Â Â Â Â  Section 3(a) of article 37.07 permits the
court to admit evidence at punishment of extraneous offenses or bad acts.Â  Tex.
Code Crim. Proc. Ann. art. 37.07 Â§ 3(a) (Vernon Supp 2004-2005).Â  However, through section 3(g), a defendant
can discover if the State intends to offer this type of evidence.Â  Tex.
Code Crim. Proc. Ann. art. 37.07 Â§ 3(g) (Vernon Supp. 2004-2005).

Â 





Â Â Â  [3]Â Â Â Â Â Â  We reject this argument because an Âopen
fileÂ policy cannot substitute for an article 37.07 section 3(g) request.Â  See
Jaubert v. State, 65 S.W.3d 73, 81-82
(Tex. App.ÂWaco 2000), revÂd on other
grounds by 74 S.W.3d 1 (Tex. Crim. App.), cert. denied, 537 U.S. 1005 (2002) (finding the difference between
Âopen fileÂ policy and the notice request under article 37.07 section 3(g) is
that under article 37.07 section 3(g), there is a continuing duty on the State
to notify defendant of all extraneous offense evidence it intends to
introduce).





Â Â Â  [4]Â Â Â Â Â Â  The Texas Court of Criminal Appeals reversed
our Jaubert decision finding
ineffective assistance of counsel because the extraneous offenses were only
presented in cross-examination/rebuttal, not in the StateÂs case-in-chief.Â  Jaubert
v. State, 74 S.W.3d 1, 4 (Tex. Crim. App. 2002).Â  Here, the State introduced the extraneous offenses
in its case-in-chief.