Bill WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 7597.

Court of Civil Appeals of Texas,
Beaumont.

Sept. 19, 1974.

Motion for Rehearing Overruled
Oct. 17, 1974.

Zbranek & Friend, Liberty, for appellant.

Bernard D. Newsom, Jr., Asst. Atty. Gen. of Texas, Austin, for appellee.

STEPHENSON, Justice.

This is a suit brought by the Texas Water Well Drillers Board in the name of The State of Texas, under Article 7621e, Vernon's Ann.Civ.St. Trial was by jury, and judgment was rendered for the State upon the verdict. The parties will be referred to here as the State and defendant.

█ Defendant has a point of error that this Act is unconstitutional because it is an invalid delegation of legislative au-thority in that it does not set forth guide-lines or standards for the Board to follow in licensing and regulating water well drill-ers. This point is overruled.

In passing upon this question we have the rules stated in Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424 (1946), to guide us:

"This Court, in testing the constitu-tionality of a statute, has variably stated the rule as follows:

"Ashford v. Goodwin, 103 Tex. 491, 131 S.W. 535, 537, Ann.Cas. 1913A, 699: 'This court must sustain it unless its invalidity be apparent beyond a reason-able doubt.'

"State v. Hogg, 123 Tex. 568, 70 S.W.2d 699; on rehearing 123 Tex. 568, 72 S.W.2d 593: '* * * the rule is that every possible presumption is in favor of the constitutionality of a statute, and such presumption obtains until the con-trary is shown beyond a reasonable doubt.'

"It is stated in the case of Brown v. City of Galveston, 97 Tex. 1, 75 S.W. 488, loc. cit. 492: 'If there be doubt as to the validity of the law, it is due to the co-ordinate branch of the government that its action should be upheld and its decision accepted by the judicial depart-ment.'" (198 S.W.2d at 440)

The Supreme Court of this state passed upon the question before us in Housing Authority v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 130 A.L.R. 1053 (1940). In this case the Housing Authority of the City of Dallas instituted eminent domain proceedings which were attacked by the landowner on the ground that the State Housing Authority Law was unconstitu-tional as an invalid delegation of legisla-tive authority. The Supreme Court held it was not unconstitutional with these state-ments:

"It is not an invalid delegation of legislative authority to grant to an admin-

istrative body the right to make rules to put into effect completed laws . . . [citing cases].

"The legislature may validly delegate the authority to find facts from the basis of which there is determined the applicability of the law; that is, an administrative body may be given the authority to ascertain conditions upon which an existing law may operate . . . [citing cases].

"In the delegation of legislative authority the legislature must set up standards, leaving to selected municipalities the making of those rules and the determination of facts to which legislative policy is to apply. Such standards may be broad where conditions must be considered which cannot be conveniently investigated by the legislature." (143 S.W.2d at 87)

In Southwestern Sav. & L. Ass'n of Houston v. Falkner, 160 Tex. 417, 331 S.W.2d 917 (1960), once again the State Supreme Court was faced with a question as to the constitutionality of a statute. Here it was urged that if the Savings and Loan Commissioner had the authority to approve or disapprove a permit to operate a branch office, that such statute did not set the standards for the Commissioner and was therefore an unauthorized delegation of legislative authority. The Court made these statements:

"Generally, a legislative delegation of rule-making authority must fix standards in order to be valid. [citing *Housing Authority* case] But under our interpretation of Article 881a–2 the same basic standards are set for the approval or disapproval of applications to open branch offices as are set for the granting of an application for a charter in the first instance. The statutory standards of public convenience and advantage, and adequate population to assure reasonable support, are sufficient statutory basis for the rules and regulations. [citing *Trapp* and *Housing Authority* cases, supra]" (331 S.W.2d at 921)

A more recent opinion by the Dallas Court of Civil Appeals in Beall Med. Sur. Clin. & Hosp. v. Texas State Bd. of Health, 364 S.W.2d 755 (Tex.Civ.App., Dallas, 1963, no writ), contains this statement of law:

"The Legislature may properly delegate to an administrative agency the authority to establish rules, regulations or minimum standards which may be said reasonably to carry out the expressed purpose of the Act. [citing *Housing Authority* and *Falkner* cases, supra]" (364 S.W.2d at 757)

Using the above cases as a guideline for us, we proceed to study the Act of the legislature creating this Board to determine whether or not this delegation of authority to the Board to enact rules and regulations is constitutional for failure to express the purpose of this Act to the extent that the Board is actually carrying out the expressed intent of the legislature.

Section 1 of this Act is the title. Section 2 contains the definitions of words used in the Act. Section 3 provides that it is unlawful for any person to act or offer to perform services as a water well driller without obtaining a certificate of registration in accordance with the rules of this Board. Other parts of Section 3 state the information that must be contained in the application for such certificate, the length of time the certificate remains in force and the fees to be paid. Such applicant must have been a resident of the state for not less than ninety days before making such application. Section 4 provides for reciprocity with other states and countries. Section 5 provides that well drillers must keep well logs on all wells dug, deepened, or altered, and deliver a certified copy to the owner and the commission. Section 6 provides for this Board to be composed of three ex-officio members and six appointed members, with their qualifications and

means of appointment and their terms of office. Three parts of Section 6 are as follows:

"(m) The Board shall prepare and grade examinations and pass upon qualifications of applicants for licenses and cause to be issued licenses to those who qualify.

"(n) The Board shall design written examinations in such a manner as to disqualify any person lacking in the necessary knowledge of drilling, completion and plugging methods and techniques and of ground water formations to the extent that the performance by such person of services as a water well driller would create a serious risk of polluting fresh water. Provided, however, that each applicant shall have the right to have such examination given him orally, in lieu of in writing.

"(o) A person who passes the examination given by the Board is entitled to be licensed under this Act."

A part of Section 7 reads as follows:

"(a) The Board shall adopt, prescribe, promulgate, and enforce all rules and regulations reasonably necessary to effectuate the provisions of this Act, including all rules governing applications for registration certificates, qualifications of applicants, marking of water well drilling rigs and equipment, standards of conduct for registered water well drillers and all rules governing procedure and practice before the Board. . . ."

Section 8 provides for revocation of a registration under specific circumstances, and the detailed procedure for such revocation. Section 9 provides a method of appeal from Board action. Section 10 provides for duties of the Texas Water Commission. Section 11 provides that the Governor may, upon petition by the commissioners court, proclaim a county to be a drought disaster area, in which event the terms of this Act are suspended. Section 12 provides that all money collected by the Commission shall be placed in the General Revenue Fund. Section 13 contains the civil penalties for failure to comply with this Act. Section 14 provides for legible identification numbers to be placed on all rigs. Section 15 provides for plugging of wells under certain conditions. Section 16 requiring a bond for all registered water well drillers was repealed. Section 17 provides that nothing in this Act shall be construed as affecting the ownership in underground water. Section 18 is a severability clause. Section 19 is a repealer clause. Section 20 provides for the authority of the Texas Water Commission to be transferred to the Texas Water Development Board or other agency in the event such commission is succeeded by the Texas Water Development Board or other agency.

Defendant cites only one case in support of this point of error, that being Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022 (1942). We have concluded that reliance upon this case is misplaced. Rule 37 adopted by the Railroad Commission was under attack, rather than the Act creating the Railroad Commission. That rule was a spacing rule for drilling oil wells and contained a provision that the Commission could grant exceptions to prevent waste. The argument was made that such rule gave the Commission arbitrary power to discriminate between individuals without any standard or guide to govern it in the exercise of its discretion. (There is no such contention in the case before us.) The Supreme Court gave Rule 37 a meaning that would not permit the Commission the authority to arbitrarily deny a permit, and held that the statutes which gave the Railroad Commission the authority to regulate the oil industry to prevent waste, undoubtedly, gave the Commission authority to make some reasonable spacing rules.

We hold that the Water Well Drillers Act is sufficiently complete and comprehensive in itself and does no more than delegate to this administrative agency the

authority to establish rules, regulations, and minimum standards to reasonably carry out the expressed purpose of the Act. That expressed purpose is to allow only those with the necessary knowledge of drilling, completion, and plugging methods and techniques and of ground formations to go into the business of drilling water wells in this state. The avoidance of pollution of fresh water is sufficient purpose in itself. There is no suggestion by anyone that the rules adopted by this Board allow the Board to arbitrarily grant or deny a permit.

A part of Section 13 of this Act reads as follows:

"The action may be brought by the board or the commission, as appropriate, in any court of competent jurisdiction in the county where the offending activity is occurring or where the defendant resides."

This suit was filed in San Jacinto County. In its trial pleadings, the State alleged that defendant is a resident of and does business in San Jacinto County. The allegations showed twenty-seven separate violations, and recovery of $1,000 per day was sought as civil penalties, in addition to injunctive relief. No plea of privilege or plea to the jurisdiction was filed by defendant. At the close of the State's evidence and again at the close of all evidence, defendant made a motion for judgment for the reason that the State had failed to prove the trial court had jurisdiction to hear this case. The point of error is that the trial court erred in not granting such motions. This point is overruled.

In Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084 (1926), a workmen's compensation proceeding, the rule is stated:

"Our construction is consistent with the general rule and authorities previously cited, which, in substance, declared that where a statute creates a right and provides a remedy for its enforcement, the remedy is exclusive, and where it confers jurisdiction upon a particular court, that jurisdiction is exclusive." (285 S.W. 1088)

Again, in Alpha Petroleum Co. v. Terrell, 122 Tex. 257, 59 S.W.2d 364 (1933), a Railroad Commission Case, it is stated:

"[W]here the suit is to enforce a right which exists only by operation of the statute, and not under the Constitution or the common law, it does lie within the power of the Legislature to designate a particular court as an exclusive tribunal to hear and determine such suit. In such a case where the statute, as this one does, provides that the suit shall be filed in a particular court, it demonstrates a conclusive legislative intent to designate such court as the only tribunal where such matter can be litigated, and, as said by our Supreme Court, speaking through Judge Cureton, in Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084, 1088: 'In special proceedings not within the common-law jurisdiction, the court's statutory designation of the venue is mandatory and jurisdictional.'" (59 S.W. 2d 367)

■ Following that line of decisions, we recognize the rule that the Water Well Drillers Act creates a right and a remedy for its enforcement, and also provides for exclusive jurisdiction in either the county in which the offending activity is occurring or where the defendant resides.

■ The evidence in this case shows defendant drilled a water well for L. J. and Mabel Rohrer in Coldspring, San Jacinto County. This trial court had jurisdiction to hear this case.

Defendant has a point of error complaining of the action of the trial court in overruling his motions for judgment for the reason that the State failed to prove the exclusionary provision in Section 11 of this Act did not apply to San Jacinto County at the times material to this case. In other words, the State failed to prove the

Governor had not declared San Jacinto County a drought disaster area.

■ We hold that Section 11 of this Act is in the nature of an affirmative defense, and the burden was upon defendant both to allege and prove the essential facts in order to take advantage of such defense. Our record shows defendant made no such allegation or proof. The matter of pleadings is covered by Rules 53 and 94. An uninterrupted line of cases hold the burden of proof is also upon a defendant to establish a statutory exclusion of liability. See Spence v. Fenchler, 107 Tex. 443, 180 S.W. 597, 607 (1915). See also, 2 McDonald Texas Civil Practice, Pleadings, Sec. 7.34.2, at 247 (1970 Rev.) and cases there cited. The point is overruled.

Defendant contends next that Article 7621e, V.A.C.S., is a penal statute, and the trial court erred in not asking the jury if the defendant "knowingly or intentionally" violated such statute. This point is overruled.

■■ We hold that this statute is not a penal statute inasmuch as it provides only for injunctive relief and civil penalties. The Supreme Court of Texas passed upon this question in State v. Harrington, 407 S.W.2d 467 (Tex.1966). This case involved Article 6036, V.A.C.S., and the violation of Rule 37 of the Railroad Commission. The Court held such article to be a civil penalty statute, and specifically that "knowledge" or "intent" was not required to be alleged and proved as a necessary element in a civil penalty action under Article 6036. Defendant testified that he had drilled the water wells in issue and had been paid for them, and also that he had done the advertising complained about. He also testified that he had never had a license or certificate of registration from the Texas Well Drillers Board, and had never made an application for one, although he was familiar with such application forms and knew that he could not qualify. Under these circumstances, if we assume arguendo that knowledge and intent are required, then those elements were established as a matter of law.

■ Defendant's last point of error complains of the action of the trial court in overruling his objection to the penalty or damage issue. This issue is as follows:

"What sum of money, if any, not more than $1,000.00 do you find from a preponderance of the evidence should be assessed against Defendant Bill Williams for each day that Defendant performed the services as a water well driller or offered to perform services as a water well driller? Answer in dollars and cents, if any, or 'None'.

"Answer: $500.00."

Defendant's objection was to the method of submission. The charge included twenty-two separate issues as to whether defendant had performed services as a water well driller on certain days and twenty-four separate issues as to whether defendant offered to perform services as a water well driller on certain days. The jury answered three of the "performed" issues in the affirmative, two of which were disregarded by the trial court as not being supported by the evidence. The jury answered fourteen of the "offered to perform" issues in the affirmative, and the trial court rendered judgment for the State to recover for fifteen days' violations at $500 per day, or the sum of $7,500. Defendant's objection was that a separate penalty issue should have been submitted for each alleged violation.

Even though that might have been a better way to submit this case, defendant has not demonstrated to this court that any harm has been done. There is no evidence in this case which would indicate in any manner that a penalty for not having registered would be any less or any more for a "performed" or "offered to perform" violation. This point is overruled. Rule 434, Rules of Civil Procedure.

Affirmed.