Eusebio **LOREDO**, Appellant,

v.

**STATE of Texas, Appellee.**

No. 10–01–00078–CR.

Court of Appeals of Texas, Waco.

Dec. 8, 2004.

Rehearing Overruled March 8, 2005.

Stan Schwieger, Waco, for appellant.

John W. Segrest, McLennan County Dist. Atty., Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Appellant, Eusebio Loredo (Loredo), was charged by indictment with three counts of felony Aggravated Sexual Assault of a Child. Loredo pled not guilty, but a jury found him guilty on all three counts. Punishment was assessed by the jury at 30 years' imprisonment for each count. The judge ordered the sentences be served consecutively. Loredo appealed on three issues, and this court reversed the judgment on the first issue and remanded the cause for a new trial.[1] The State sought discretionary review. The Court of Criminal Appeals reversed our judgment and remanded the cause to this Court to address Loredo's two remaining issues. *Loredo v. State*, 107 S.W.3d 36 (Tex.App.-Waco 2003), *rev'd*, 159 S.W.3d 920, 2004 WL 743833, 2004 Tex.Crim.App. LEXIS 635 (Tex.Crim.App. April 7, 2004). Loredo's two remaining issues are: 1) trial counsel was ineffective for failing to file a request for notice under article 37.07 section 3(g) of the Code of Criminal Procedure; and 2) Texas Code of Criminal Procedure article 42.08 is violative of the delegation doctrine and therefore unconstitutional under article II, section one of the Texas Constitution.

We will affirm the judgment.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Loredo argues that his trial counsel was ineffective in failing to file a request for notice under article 37.07 section 3(g) of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(g) (Vernon Supp 2004–2005).[2] Counsel failed to request that the State give notice of its intent to offer evidence of extraneous offenses or bad acts, and Loredo argues that this failure fell below the "objective standard of reasonableness."

■ The State argues that this court should not establish a bright-line rule that it is a mandatory duty of defense counsel to request notice under article 37.07 section 3(g), particularly when the State had an open-file policy[3] and without knowing Loredo's counsel's punishment-phase strategy.

■ We must adhere to the United States Supreme Court's two-pronged *Strickland* test to determine whether counsel's representation was so inadequate as to violate a defendant's Sixth Amend-

---

1. The remaining two issues were not decided.

2. Section 3(a) of article 37.07 permits the court to admit evidence at punishment of extraneous offenses or bad acts. TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a) (Vernon Supp 2004–2005). However, through section 3(g), a defendant can discover if the State intends to offer this type of evidence. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(g) (Vernon Supp.2004–2005).

3. We reject this argument because an "open file" policy cannot substitute for an article 37.07 section 3(g) request. *See Jaubert v. State*, 65 S.W.3d 73, 81–82 (Tex.App.-Waco 2000), *rev'd on other grounds by* 74 S.W.3d 1 (Tex.Crim.App.), *cert. denied*, 537 U.S. 1005, 123 S.Ct. 495, 154 L.Ed.2d 403 (2002) (finding the difference between "open file" policy and the notice request under article 37.07 section 3(g) is that under article 37.07 section 3(g), there is a continuing duty on the State to notify defendant of all extraneous offense evidence it intends to introduce).

ment right to counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim. App.1999). The *Strickland* test applies to the punishment phase of a noncapital case. *Hernandez v. State,* 988 S.W.2d 770, 772 (Tex.Crim.App.1999).

■ *Strickland* requires a defendant to show that: (1) counsel's representation fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defendant. *Roe v. Flores–Ortega,* 528 U.S. 470, 476–77, 120 S.Ct. 1029, 1034, 145 L.Ed.2d 985 (2000); *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The assessment of whether a defendant received ineffective assistance of counsel must be made according to the facts of each case. *Thompson,* 9 S.W.3d at 813. The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Id.* A single error can be so substantial that it causes the attorney's assistance to fall below the Sixth Amendment standard. *Id.*

### Entitled to Notice

■ Because Loredo is arguing that his counsel was deficient in failing to request notice of the State's intent to use extraneous bad acts, we first ask whether he was entitled to the notice. *Jaubert v. State,* 74 S.W.3d 1, 2 (Tex.Crim.App.), *cert. denied,* 537 U.S. 1005, 123 S.Ct. 495, 154 L.Ed.2d 403 (2002). Because the State offered the evidence of extraneous bad acts in its case-in-chief in the punishment phase, not during cross-examination or rebuttal, Loredo was entitled to notice of these acts. *Id.* at 4.

### Objective Standard of Reasonableness

■ When reviewing a claim of ineffective assistance of counsel under the first prong of *Strickland,* there is a strong presumption that defense counsel's conduct was reasonable and constituted sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. We evaluate the totality of the representation from counsel's perspective at trial, rather than counsel's isolated acts or omissions in hindsight. *Gutierrez v. State,* 8 S.W.3d 739, 749 (Tex.App.-Austin 1999, no pet.). Appellant has the ultimate burden to overcome this presumption and demonstrate not only that counsel's performance was unreasonable under the prevailing professional norms, but that the challenged action was not sound trial strategy. *Id.*

■ We have previously held that there could be no strategic basis for not requesting notice under article 37.07 section 3(g). *Jaubert v. State,* 65 S.W.3d 73, 81–82 (Tex.App.-Waco 2000), *rev'd on other grounds by* 74 S.W.3d 1 (Tex.Crim. App.), *cert. denied,* 537 U.S. 1005, 123 S.Ct. 495, 154 L.Ed.2d 403 (2002).[4] "The purpose of article 37.07 § 3(g) is to avoid unfair surprise, that is trial by ambush." *Chimney v. State,* 6 S.W.3d 681, 697 (Tex. App.-Waco 1999, no pet.). "[T]he purpose is to allow the defendant adequate time to prepare for the State's introduction of the [evidence] at trial." *Id.* at 693–94. Because Loredo's counsel should not want to be ambushed with extraneous bad acts introduced by the State at the punishment hearing, we find this failure to request notice unreasonable and not justifiable by sound trial strategy. *See Ex Parte Menchaca,* 854 S.W.2d 128, 129 (Tex.Crim.App. 1993) (finding counsel was ineffective in

4. The Texas Court of Criminal Appeals reversed our *Jaubert* decision finding ineffective assistance of counsel because the extraneous offenses were only presented in cross-examination/rebuttal, not in the State's case-in-chief. *Jaubert v. State,* 74 S.W.3d 1, 4 (Tex. Crim.App.2002). Here, the State introduced the extraneous offenses in its case-in-chief.

failing to file a motion in limine to prohibit the introduction of a prior rape conviction in a trial for delivery of a controlled substance); *see also Autry v. State*, 27 S.W.3d 177, 182 (Tex.App.-San Antonio 2000, pet. ref'd) ("[P]urposefully deciding not to request disclosure by the State of its intent to introduce evidence of extraneous offenses may amount to questionable trial strategy ...."). Loredo has met his burden to show that his counsel's representation fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Jaubert*, 65 S.W.3d at 82–83.

**Prejudice**

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, *i.e.*, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Mallet v. State*, 9 S.W.3d 856, 866 (Tex.App.-Fort Worth 2000, no pet.). The appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*, at 669, 104 S.Ct. at 2056.

During the State's case-in-chief in the punishment phase, the State introduced testimony of eight witnesses. Three were law enforcement officers who testified they were familiar with Loredo's bad reputation with regard to being peaceful and law-abiding.

Another witness, Melissa Pick, the mother of two of Loredo's children, testified that Appellant was not peaceful and law-abiding. She testified that Loredo is a drug user. She described one incident where he stole money from her for drugs and she confronted him, which lead to a fight with him "pushing and slinging" her and then he held a knife to her throat and threatened to kill her. She also testified that he punched her in the eye during labor with their second child. She testified that he threw his dad over the dining room table after one of their fights. She explained an incident where he punched her in the eye one night and that she reported to the police. Finally, she stated she left him because of his violence and he no longer visited his children. The police officer, who took the report from Melissa about being punched in the eye, testified consistently with Melissa's testimony.

Sabrina, the mother of Loredo's third child, also testified that Loredo was not peaceful or law-abiding. She testified that Loredo was a drug user. Sabrina described an incident where Loredo punched her in the face and attempted to choke her when she was eight months pregnant. She testified about another incident where Loredo pointed an AK–47 at her head while she was holding their son and then started shooting the gun all around the room and then punched her in the face. She also testified that Loredo grabbed her by the neck and hair at a dance and police officers had to get Loredo off of her. Two detectives testified about this incident at the dance and stated that they arrested Loredo for assault that night. Additionally, Sabrina described an assault on her and a sexual assault on Sally (a friend of theirs) one evening when they were partying. She stated that she eventually left him.

On cross-examination, Appellant's counsel did not ask any questions to four of the State's witnesses and asked a few questions to the other State's witnesses. During rebuttal, Appellant's counsel called Sally, and she testified that Loredo did not sexually assault her. Loredo's counsel

also called Loredo's mother who testified that Loredo did not own an AK–47, and Loredo did not throw his father (her husband) across a dining room table. She also testified that Sabrina would have reason to lie because she resented Loredo for having sole possession of their son for an extensive period of time after she left him.

During rebuttal by the State, an officer testified that he responded to the call where Loredo allegedly assaulted Sabrina and sexually assaulted Sally. He testified consistently with the description provided by Sabrina. On further rebuttal, Appellant's counsel called Alicia (a friend who was present the night of the assaults), and she testified that Sabrina and Loredo were consuming cocaine that night and Loredo did not try to "mess with" Sally. Alicia stated that she did not speak to the police that night regarding what had happened. The State then recalled the officer who responded the night of the alleged sexual assault and testified that Alicia did tell him that Loredo wanted to f___ Sally and had been trying to get her all day, which he documented in his report.

After hearing this testimony, the jury assessed punishment at 30 years' imprisonment and no fine for each of the three counts. The maximum punishment for each count was life imprisonment and a $10,000.00 fine. Our review of the punishment phase of the trial shows that Loredo's counsel appeared to have been prepared to rebut the State's evidence of the extraneous bad acts based on his immediate rebuttal with Sally and Loredo's mother and later rebuttal with Alicia. Loredo's counsel did not seem surprised by any of the State's witnesses. There is nothing in the record to indicate and Loredo does not argue that his counsel would have taken different steps to rebut or object to the State's evidence had he received written notice of these extraneous bad acts. *See*

*Autry v. State*, 27 S.W.3d 177, 182 (Tex. App.-San Antonio 2000, pet. ref'd) ("[Appellant] has not stated what steps he would have taken if he had received written notice of the State's intent to introduce extraneous evidence."). There is also nothing in the record to indicate that the jury might have assessed less than 30 years for each count—based on the record, it is not reasonably probable that Loredo's sentence would have been any less. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Therefore, we do not find that counsel's error was so serious that it deprived Loredo of a fair trial. *Id.*, at 687, 104 S.Ct. at 2064. This error was not of a magnitude significant enough to render Loredo's counsel ineffective. *Thompson*, 9 S.W.3d at 813. We overrule issue one.

## UNCONSTITUTIONALITY OF TEXAS CODE OF CRIMINAL PROCEDURE ART. 42.08(A)

Loredo argues that article 42.08(a) violates the constitutional delegation doctrine (principle of separation of powers) because there are not sufficient or adequate guidelines for the trial court's exercise of its discretion in determining whether the sentences should be cumulated or run concurrently. *See* TEX.CODE CRIM. PROC. ANN. art. 42.08(a) (Vernon Supp. 2004–2005). Appellant properly preserved this issue in his motion for new trial. TEX. R.APP. P. 33.1(a)(1).

When reviewing an attack on the constitutionality of a statute, the appellate court begins with a presumption that the statute is valid and the Legislature has not acted unreasonably or arbitrarily. *Luquis v. State*, 72 S.W.3d 355, 365 n. 25 (Tex.Crim.App.2002). This presumption stands until the contrary is shown beyond a reasonable doubt. *Williams v. State*, 514 S.W.2d 772, 773 (Tex.Civ.App.-Beaumont 1974, writ ref'd n.r.e.) (citing *Trapp*

*v. Shell Oil Co.*, 145 Tex. 323, 198 S.W.2d 424 (1946)). The burden is on the party challenging the statute to establish its unconstitutionality. *Ex parte Ports*, 21 S.W.3d 444, 446 (Tex.App.-San Antonio 2000, pet. ref'd).

Loredo acknowledges that the Court of Criminal Appeals has ruled that this statute is not an unconstitutional delegation of authority. *See Johnson v. State*, 492 S.W.2d 505, 506 (Tex.Crim.App.1973); *Hammond v. State*, 465 S.W.2d 748, 752 (Tex.Crim.App.1971). But he argues that *Johnson* has been impliedly overruled by *Ex parte Granviel*, 561 S.W.2d 503 (Tex. Crim.App.1978) (en banc) (regarding the constitutionality of Tex.Code Crim. Proc. Ann. art. 43.14 (1977)), and *In re Johnson*, 554 S.W.2d 775, 780–81 (Tex.Civ.App.-Corpus Christi 1977), *writ ref'd n.r.e. per curiam*, 569 S.W.2d 882 (Tex.1978) (regarding the constitutionality of Tex.Rev.Civ. Stat. Ann. art. 2324 (1976)). Neither *Ex parte Granviel* or *In re Johnson* deal with the constitutionality of article 42.08; therefore we disagree with Loredo that *Johnson* and *Hammond* have been impliedly overruled. Since there has been no change in article 42.08 that is material to this appeal since *Johnson* and *Hammond* were decided, we are bound by the Court of Criminal Appeals' holdings regarding its constitutionality. We overrule issue two.

### CONCLUSION

We overrule both of Loredo's issues. Therefore, we affirm the judgment.

Chief Justice GRAY concurs.

TOM GRAY, Chief Justice, concurring.

Seems to me we've been down this road before. And no matter how the Court characterizes it, we were reversed. *Jaubert v. State*, 65 S.W.3d 73 (Tex.App.-Waco 2000), *rev'd*, 74 S.W.3d 1 (Tex.Crim.App. 2002). This Court either cannot, or does not want to, follow the procedures set forth by the Court of Criminal Appeals. What may save this Court from embarrassment in this case is that after its discussion of why Loredo met the first prong of ineffective assistance of counsel, the Court concludes he was not prejudiced and affirms the judgment. I agree with that ultimate conclusion, but I cannot agree to the route the Court takes to get there.

First, the Court concludes that, as a matter of law, there cannot be a reason why defense counsel would not make an extraneous offense/bad acts request. Hmmm, I thought I gave them ample reasoning four years ago why an attorney may not formally request notice of extraneous offenses. If no one remembers, here is my analysis:

> From the record discussed above, there is no per-se evidence of ineffective assistance. The majority concludes that the Jaubert's counsel was ineffective because he did not file a request pursuant to Article 37.07. (Footnote omitted). However, to conclude that this was ineffective assistance of counsel, the majority has to make a number of presumptions that are not supported by the record. By doing this, the majority changes the presumption the Court of Criminal Appeals has directed that we are bound to apply-to "strongly presume" that counsel was effective. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996). Reversing this presumption allows the majority to conclude that Jaubert's trial counsel's failure to request notice under Article 37.07 § 3(g) "... was unreasonable and is not justified by 'trial strategy.'"
>
> Rather than presume effective assistance of counsel, they have presumed ineffective assistance and searched the record for an explanation to justify why counsel would not have made the re-

quest. Even in this search, they ignore the statements in the record that indicate a perfectly reasonable explanation for not wasting resources by filing a request for the Article 37.07 disclosure. The Tarrant County District Attorney has an open file policy. While an open file policy will not suffice if a formal Article 37.07 request is made, Jaubert's attorney could have examined the DA's file and determined that the jail offense reports were present. In this very efficient manner, counsel could have learned what information the DA's office had and could prepare to respond to it. This could be done without the need for a formal request and a formal response. Jaubert loses no statutory rights and does not receive any less effective representation. In fact, this may work to Jaubert's benefit by not forcing the State to focus on the other-bad-act evidence by having to prepare a written response as is required if the defendant files a formal written request.

Further, there is no prohibition from obtaining this information by way of an oral request. The majority ignores this possible explanation and thus presumes there was no oral request. Of course, there is no documentation to prove that an oral request was made. But the statute does not require a written request before the State can provide the responsive information. By allowing for the possibility of an oral request and informal response, the lawyers are left to work out the discovery in the most efficient manner with the least amount of time and paper wasted. It seems that we should do everything we can to facilitate this type of cooperation rather than destroy it.

As indicated, there is no evidence in the record of an oral request and nothing in the record that affirmatively shows that the State provided the information in response to an oral request or simply volunteered the information, knowing that if requested that they would have to produce it. This brings me back to the presumptions. The majority has presumed that there was no oral request and no voluntary cooperation, again presuming ineffectiveness. Whereas, I presume this could be a perfectly reasonable explanation for the absence of a written request. This becomes an evidentiary issue that could be resolved at a fact hearing.

I believe that the Court of Criminal Appeals has clearly articulated the effect of the rules applicable to evaluating claims of ineffective assistance of counsel. The clear result of the applicable presumptions is that if any set of facts that is not contrary to the existing record could exist that would allow the conclusion to be reached that counsel was effective, the judgment must be affirmed.

As it has been repeatedly discussed in prior cases, because of the inability to resolve potential factual disputes or issues, direct appeal of ineffective assistance of counsel claims is particularly difficult. Without a record to develop the factual underpinnings of a claim, a cold record is seldom adequate to prove ineffectiveness of counsel. *See Gonzalez v. State*, 994 S.W.2d 369 (Tex.App.-Waco 1999, no pet.); *Foster v. State*, 8 S.W.3d 445 (Tex.App.-Waco 1999, no pet.). The defendant is not without relief. The defendant's relief is by a post trial writ of habeas corpus to show that the state of facts which could exist does not in fact exist.

Of course there is a much more pragmatic explanation for not making the Article 37.07 request. It is a problem trial lawyers face all the time. "Do I make the request and cause the opposi-

tion to focus on the issue, and possibly cause them to discover previously unknown bad acts, or do I trust my client to tell me what is out there in the way of other bad acts and simply prepare to meet it if the State is aware of it and decides to use it?" Even civil practitioners are faced with this dilemma when requesting discovery of whether their opponent intends to use any final convictions to impeach any of their witnesses. TEX. R. EVID. 609(f). This is a variant of the doctrine-of-negative-surveillance-"Do I ask for something that may work to my benefit but also has the very real risk of causing me to come under greater scrutiny?"

Another possible explanation, given the excellent manner in which defense counsel conducted Jaubert's case, is that having nothing to counter this evidence with, the defense "put their best foot forward" and hoped for the best. Jaubert may have been fully aware of the State's intended use of the information but had no other evidence to counter it with. Even on appeal, Jaubert has not claimed that he would have done a single thing differently had he known the State possessed and intended to use this information. I would say this trial strategy worked pretty well for Jaubert. His sentence for killing one person and attempting to kill four others was a maximum time in prison of only 60 years. *Jaubert*, 65 S.W.3d at 95–97 (Gray, J., dissenting).

I believe these arguments from *Jaubert* apply to this case as well. And one statement bears repeating. "The clear result of the applicable presumptions is that if any set of facts that is not contrary to the existing record could exist that would allow the conclusion to be reached that counsel was effective, the judgment must be affirmed." *Id.* at 96–97.

Second, to come to this "matter of law" conclusion, the Court relies on its previous determination of that issue from *Jaubert*. But just because the Court of Criminal Appeals did not reach that issue and reverse the Court on that holding does not mean what this Court further decided in *Jaubert* was right. The Court of Criminal Appeals determined that this Court was wrong in its decision that the notice requirements applied to rebuttal evidence. Once the Court of Criminal Appeals made their decision, it did not matter what other errors this Court had made in reversing the conviction. It became unimportant. Indeed, it rendered everything else this Court said in that opinion dicta because any other discussion was not necessary to a *proper* disposition of the appeal, just prattle. For the same reason, the Court of Criminal Appeals properly did not address this Court's faulty holding that as a matter of law there could be no reasonable explanation for failing to make the request. Any comment by the Court of Criminal Appeals addressing that issue would have been dicta because it was not essential to the disposition of the case as presented.

Third, as in *Jaubert*, this Court ignores Court of Criminal Appeals' precedent that counsel should ordinarily be afforded an opportunity to explain the actions taken or not taken, as the case may be, before being condemned as unprofessional and incompetent. *Bone v. State*, 77 S.W.3d 828, 836 (Tex.Crim.App.2002). This Court does not even mention counsel's lack of any opportunity to explain his actions or inactions. "Ineffective assistance of counsel claims are not [supposed to be] built on retrospective speculation; they must 'be firmly founded in the record.'" *Id.* at 835. The record must itself *affirmatively* demonstrate the alleged ineffectiveness. *Id.; Thompson*, 9 S.W.3d at 813–14. A record, "... silent as to why appellant's trial coun-

sel took or failed to take ..." certain actions, is not adequate to establish ineffective assistance of counsel. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex.Crim.App. 2003). Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone*, 77 S.W.3d at 833. The more appropriate vehicle to raise ineffective assistance of counsel claims is an application for writ of habeas corpus. *Rylander*, 101 S.W.3d at 110.

But this Court rejects the presumption to make a hard and fast rule that a defendant need not do anything to establish the first prong of ineffective assistance except show that counsel did not make an extraneous offense request. Period. End of Discussion. Proceed to the second prong without any further analysis.

That's not looking at the totality of the representation.

That's not affording counsel an opportunity to explain.

And that's not the law except temporarily in 16 counties in Central Texas and in any case that happens to be transferred to us.

Fourth, we all agree that Loredo failed to establish that he was prejudiced by his counsel's inaction. Wouldn't it be more appropriate to avoid the first prong fiasco when we agree on the disposition of the second prong? Yes. Is the object of an ineffectiveness claim to grade counsel's performance? No. *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* And

it has. The Court of Criminal Appeals has said that the failure to make *either* of the required showings defeats an ineffective assistance of counsel claim. *Rylander*, 101 S.W.3d at 110. Moreover, if an appellant fails to meet the prejudice prong, the reviewing court need not address the question of counsel's performance. *Boyd v. State*, 811 S.W.2d 105, 109 (Tex.Crim.App. 1991). But that would prevent the Court from making the hard and fast rule it wants to make, that the failure to make the request is, per se, failure to perform as reasonably competent counsel. A rule that I am positive will come back to haunt us if not promptly rejected by a higher authority.

### MUSING WITH DEFENSE COUNSEL

With this holding on the books, would it be ineffective assistance of counsel to make an extraneous offense request? Let us assume you have been a diligent attorney, fully researched your client's criminal history, carefully interviewed your client and your client's associates and reviewed the D.A.'s file pursuant to an open file policy. Now it comes time to work a little strategy. If you make the request in writing, you have affirmatively negated an argument that you were ineffective for that failure. But by making the request, you have also negated one half of the necessary equation for getting your client's punishment phase reversed. All appellate counsel needs to show is that you did not make a written request and your client is half way home to success on an ineffective assistance of counsel claim. The first prong is easily established as a matter of law. Have you thus been ineffective for not preserving this benefit for your client by having made the request when it serves no useful purpose for your client?

### MUSING WITH THE DISTRICT ATTORNEY

Welcome to the world of implied motions. Your only safe harbor to hold onto

a conviction in which you intend to use extraneous offenses in your case-in-chief is to act as if defense counsel has filed a written request. This is like an implied motion, and you should file a formal written response whether a written motion is filed or not. Now I know this seems contrary to the requirement of the Code that the request be in writing. But while you may not have to file a response unless the request is in writing, by filing a written "response" you may have defeated the defendant's ability to meet the first prong of the test for ineffective assistance of counsel, and definitely defeated the second prong.

MUSING WITH THE COMMISSIONER'S COURT

Has a commissioner's court considered a suit for a refund of attorney's fees paid to counsel whose conduct fell so far below an objective standard of reasonableness that you have to pay another attorney to pursue an appeal to establish that failure and then pay another attorney to retry the defendant? Is there no bottom to this pit into which taxpayer money is thrown?

For these reasons, I concur only in the judgment of this Court.