**Affirmed and Memorandum Opinion filed November 18, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00209-CR

**TAYLOR GUILLORY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1596766**

## MEMORANDUM OPINION

Appellant Taylor Guillory challenges his conviction for aggravated assault with a deadly weapon, asserting that he received ineffective assistance of counsel and the trial court erred in failing to grant him a new trial. Concluding that appellant has not demonstrated he received ineffective assistance on this undeveloped record on direct appeal, we affirm.

## *Background*

Eleven-year-old D.G. was walking home with a friend one afternoon. As he passed by appellant's house, he observed appellant with an assault rifle and a shotgun. According to D.G., appellant put the assault rifle into his car, and then aimed the shotgun at D.G. and his friend. D.G. testified that he told his friend to run home and D.G. himself ran home. Appellant followed D.G. with the gun site as D.G. ran. D.G. ran into his home and told his stepfather what happened and that he was afraid.

Two days later, police officers arrived at appellant's home and seized a shotgun from appellant's bedroom. The officers did not have a search warrant, but an officer testified that appellant's mother consented to the search. He conceded that she did not sign the standard consent to search form. Appellant's mother also testified as a defense witness. She told the jury that she initially refused to allow officers to search her home and did not consent to the search until an officer threatened to arrest her and she was placed into a patrol car in handcuffs.

During the punishment phase of trial, D.G.'s mother testified that appellant came to their house, asked her and her husband why they were pressing charges, and accused D.G. of lying. According to D.G.'s mother, after they told appellant "that they were going to take it to court," appellant "became a little more hostile, throwing his hands around, pacing," and after they asked him to leave, appellant "continued to mumble and walk back and forth in front of [their] home" before he left. Defense counsel objected on the basis that he had not received notice of the State's intention to elicit testimony about this incident, but after he admitted that he had not requested notice, the trial court overruled the objection.[1]

---

[1] The prosecutor informed the trial court that notice of this incident had been provided to appellant.

D.G.'s mother also told the jury that appellant previously had threatened to kill her husband. The trial court sustained defense counsel's hearsay objection to this testimony and instructed the jury to disregard it.[2] D.G.'s mother subsequently testified without objection that her husband was in "an extreme emotional state" when he told her he received a death threat from appellant. This incident was not included in the State's notice of extraneous offenses and bad acts.

## *Discussion*

In four issues, appellant contends that he received ineffective assistance on the grounds that his trial attorney (1) did not file a pretrial motion to suppress or object to the admission at trial of a firearm seized from appellant's home, (2) failed to investigate the State's punishment case or request notice of extraneous offenses the State intended to introduce during the punishment phase of trial, and (3) failed to investigate or present mitigating evidence of appellant's mental health history during the punishment phase of trial.

To prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) trial counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong. *Lopez*, 343 S.W.3d at 142.

To satisfy the first prong, an appellant must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of

---

[2] D.G.'s mother initially testified that her husband received a death threat, and the trial court sustained a hearsay objection but did not instruct the jury to disregard the statement. The trial court instructed the jury to disregard the later statement from D.G.'s mother that her husband told her "I just received a death threat."

reasonableness under prevailing professional norms. *Id*. In making this showing, an appellant must overcome a strong presumption that trial counsel's actions fell within the wide range of reasonable and professional assistance. *See id*.; *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). "Before granting relief on a claim that defense counsel failed to do something, we ordinarily require that counsel be afforded the opportunity to outline the reasons for the omission." *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007). In determining whether counsel was ineffective, we consider the totality of the circumstances. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id*.

If trial counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we will typically defer to counsel's decisions and deny relief on an ineffective assistance claim. *Garza*, 213 S.W.3d at 348. "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Lopez*, 343 S.W.3d at 142-43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). Absent a record sufficient to demonstrate that trial counsel's conduct was not the product of a strategic or tactical decision, we should presume that trial counsel's performance was constitutionally adequate "unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *State v. Morales*, 253 S.W.3d 686, 696-97 (Tex. Crim. App. 2008).

To satisfy the second prong, an appellant must show that there is a reasonable probability—or a probability sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different but for trial

counsel's unprofessional errors. *Lopez*, 343 S.W.3d at 142.

## I.    Failure to Suppress Not Prejudicial

Appellant contends in his first issue that his trial counsel did not "adequately pursue the suppression of" a shotgun seized from appellant's home because counsel did not file a pretrial motion to suppress or seek a pretrial hearing and present evidence that appellant's mother did not voluntarily consent to allow officers to search the home. A trial counsel's failure to file a motion to suppress is not per se ineffective assistance of counsel. *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.). To prove ineffective assistance of counsel for failing to move to suppress evidence, appellant is required to show not only that the motion to suppress would have been granted but also that the remaining evidence would have been insufficient to support his conviction. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (per curiam) (to satisfy *Strickland*, appellant is obliged to prove that motion to suppress would have been granted); *Wert*, 383 S.W.3d at 753.

Here, an officer testified at trial that appellant's mother consented to the search. At that point, defense counsel examined the officer on voir dire outside the presence of the jury, and the officer admitted that he did not have a search warrant and appellant's mother did not sign a consent to search form. Defense counsel orally moved to suppress the shotgun seized from appellant's home, which the trial court denied. Later during the defense case-in-chief, appellant's mother testified that she initially refused to allow officers to search her home and only consented to turn over the shotgun after an officer threatened to arrest her and she was handcuffed and placed into a patrol car.

Presuming without deciding that a pretrial motion to suppress would have been granted after a pretrial hearing in which appellant presented this testimony

5

from his mother, we are also required to determine whether the other evidence presented during trial was sufficient to support appellant's conviction. The State was required to prove that appellant intentionally or knowingly threatened D.G. with imminent bodily injury while using or exhibiting a deadly weapon. Tex. Penal Code §§ 22.01(a)(2), 22.02(a)(2). Aiming a deadly weapon at someone is sufficient evidence of a threat to support an aggravated assault conviction. *Ward v. State*, 113 S.W.3d 518, 521 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see also Bedard v. State*, No. 14-18-00345-CR, 2019 WL 5444300, at *4 (Tex. App.— Houston [14th Dist.] Oct. 24, 2019, no pet.) (mem. op., not designated for publication). Eyewitness testimony regarding the use of a firearm is sufficient to support a finding of use or exhibition of a deadly weapon. *Gomez v. State*, 685 S.W.2d 333, 336 (Tex. Crim. App. 1985); *Carter v. State*, 946 S.W.2d 507, 511 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd). And corroboration of the complainant's description of the weapon is not required to support a finding of use or exhibition of a deadly weapon. *Gomez*, 685 S.W.2d at 336.

D.G. testified that he was walking home when appellant aimed a shotgun at him and followed him with the gun site. D.G.'s stepfather testified that D.G. ran into his front door screaming and was panicked and "in fear." Moreover, appellant's mother testified during the defense's case-in-chief that on the day of the purported offense, she and appellant were going to the shooting range and appellant was carrying "the shotgun with the rifle" to put in the trunk of their car when two younger children walked by. That testimony is consistent with D.G.'s testimony that he was walking with a friend when appellant pointed a shotgun at him.[3] Another witness testified for the State that a few months after the alleged offense, appellant came into her place of business and told her, "I already pulled a

---

[3] Appellant's mother also testified that she told her son to be careful because there were kids nearby and appellant put the firearms directly into the trunk.

gun on my neighbors, and if you call the police, I will shoot everyone in here." Appellant has not shown that this evidence was insufficient to support his conviction. *See Guevara v. State*, No. 14-16-00701-CR, 2018 WL 771218, at *10–11 (Tex. App.—Houston [14th Dist.] Feb. 8, 2018, pet. ref'd) (mem. op., not designated for publication) (holding appellant seeking to establish ineffective assistance for failure to file motion to suppress did not meet burden to show that remaining evidence was insufficient to support convictions).

Appellant has not shown on this record that the result of the proceeding would have been different but for trial counsel's unprofessional errors. We overrule appellant's first issue.

## II. Failure to Request Notice of State's Intention to Introduce Extraneous Offenses or Bad Acts Not Prejudicial

In his second issue, appellant contends that he received ineffective assistance during the punishment phase of trial because his attorney failed to request notice of extraneous crimes or bad acts that the State intended to introduce at trial. Specifically, appellant asserts that if his attorney had requested notice, he could have asked the trial court to exclude evidence regarding a purported death threat from appellant against D.G.'s stepfather on the basis that this incident was not included in the notice.[4]

Evidence of extraneous offenses or bad acts is admissible during the punishment phase of trial. Tex. Code Crim. Proc. art. 37.07 § 3(a). On timely request from a defendant, the State is required to provide notice that it intends to offer this type of evidence. *Id*. art. 37.07 § 3(g). The purpose of the notice requirement is to give the defendant adequate time to prepare for trial and avoid

---

[4] As mentioned, D.G.'s mother also testified that appellant came to their house, asked them to drop the aggravated assault charge, and then became hostile and did not immediately leave when asked. Appellant does not contend this incident was omitted from the notice.

trial by ambush. *Loredo v. State*, 157 S.W.3d 26, 29 (Tex. App.—Waco 2004, pet. ref'd). Accordingly, the failure to request such notice can result in trial counsel being ambushed with extraneous bad acts introduced by the State during the punishment phase. *Id.* One sister court has held such a failure to be "unreasonable and not justifiable by sound trial strategy." *See id.* Another sister court has held to the contrary that the failure to request notice, standing alone, generally is not egregious enough to constitute ineffective assistance of counsel. *See Rodriguez v. State*, 981 S.W.2d 357, 359 (Tex. App.—San Antonio 1998, no pet.).

Yet another has noted that "[i]n general, trial counsel's failure to file pre-trial motions, such as a request for notice of intent to introduce extraneous offense evidence, does not result in ineffective assistance of counsel," but in that case, the court declined to decide whether trial counsel's failure to request notice under article 37.07 constituted deficient performance. *See Martinez v. State*, 449 S.W.3d 193, 208 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). We likewise do not need to reach this issue because appellant has not demonstrated on this record that if he had received timely notice, the jury's assessment of punishment would have been less severe in the absence of counsel's deficient performance. *See id.* (citing *Milburn v. State*, 15 S.W.3d 267, 270 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)).

During the punishment phase, in addition to the testimony from D.G.'s mother, the State presented testimony from three other witnesses. A teacher from appellant's high school testified that appellant intentionally pushed him and fell on top of him, which resulted in the teacher having a concussion, two seizures, and a torn rotator cuff. At the time of trial six years later, the teacher was still on seizure medication from the incident. A gas station attendant testified that appellant displayed a machete and threatened to kill the attendant and his family after the

8

attendant refused to sell alcohol to appellant at a time when he was underage. D.G. also testified that he had been "pretty scared" and under a lot of stress since the time of the alleged offense. He did not feel safe to go outside by himself.

Appellant also stipulated at trial that he had received juvenile court adjudications of felony offenses for aggravated assault using a deadly weapon and assault resulting in bodily injury against a public servant, as well as misdemeanor offenses for criminal trespass and evading arrest. Appellant further stipulated that he had been convicted of the following misdemeanors that occurred after the alleged offense at hand: driving while intoxicated, theft, and criminal trespass. The jury had also heard during the guilt-innocence phase of trial the testimony mentioned above that appellant allegedly threatened a witness by telling her he had pulled a gun on his neighbors and would "shoot everyone in here . . . if you call the police."

During closing arguments, the prosecutor asked the jury to consider "at least five year's prison time" based on the following factors: the effect of the alleged offense on D.G., appellant's prior juvenile adjudications and misdemeanor convictions, the threats that appellant had previously made against several people, and prior assaults. The prosecutor did not mention the purported death threat against D.G.'s stepfather.

Considering the totality of evidence presented at trial, appellant has not established on this record that, had his trial counsel requested notice from the State of its intent to offer extraneous offenses or bad acts evidence, a reasonable probability exists that the jury would have assessed a less severe sentence. *See id*. at 208-09. We overrule appellant's second issue.

### III. Record Undeveloped as to Failure to Investigate Mental Health History and Present Mitigating Evidence

9

Appellant contends in his third issue that he received ineffective assistance because his attorney purportedly failed to investigate and present mitigating evidence of his history of mental illness. Appellant contends that trial counsel was aware of appellant's mental illness and treatment history and testimony from appellant's mother at his bond hearing should have generated further investigation.

Failure to conduct an adequate investigation may constitute ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 521–23 (2003). As the Supreme Court said in *Strickland*, "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. A claim for ineffective assistance based on trial counsel's failure to investigate generally fails absent a showing of what the investigation would have revealed that reasonably could have changed the result of the case. *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citing *Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007)).

Appellant argues that his mother's testimony at his bond hearing shows his trial counsel "knew the issue existed and merited further investigation." His mother testified at the bond hearing that appellant had certain mental health issues, including "[a]ggressive behaviors[.] Slightly maybe bipolar. ADHD for sure." According to his mother, appellant had been under the care of mental health professionals and was taking medication off and on for years. Appellant contends this information should have prompted his trial counsel to conduct further investigations. Presuming that is true, however, the record is silent as to what investigative steps counsel took and what conclusions he may have subsequently drawn. *See, e.g., Brown v. State*, 129 S.W.3d 762, 767 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("We will not assume that counsel did not investigate a

10

defense when the record is merely silent as to the depth of counsel's investigation.") (citing *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986)). When the record is silent as to counsel's trial strategy, we may not speculate about why counsel acted as he did. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

Appellant also contends that his trial counsel should have offered additional evidence of his mental health history at his punishment hearing and that failure to do so was ineffective assistance of counsel. In particular, appellant argues that his counsel should have introduced more information regarding appellant's diagnoses, what medications he took, and the seriousness of his mental health struggles. Appellant's mother testified at the punishment hearing that her son was "off balance from time to time," and "had ADHD at one point, borderline bipolar." She also said he had received medical attention and was on medication. The State also introduced evidence showing that appellant was ordered to undergo a psychological evaluation in a prior juvenile proceeding.

Although appellant complains that apart from his mother's testimony, his counsel should have introduced more information about his mental health history, appellant does not identify any specific mental health evidence related to his diagnoses and medication that the jury could have considered to mitigate his punishment. To meet his burden of showing his counsel's performance was deficient, appellant was required to point to evidence in the record that affirmatively demonstrates "the meritorious nature of the claim." *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). The evidence in the record regarding appellant's mental health history, moreover, is not unambiguously helpful for the defense: his mother recognized that appellant suffered from certain mental illnesses and sometimes took medication, but there is no evidence regarding

how appellant's mental health history could have been considered as a mitigating factor—for example, this evidence does not show how his mental health history, without more, could, in appellant's words, "explain the cause of [his] behavior and the steps that could be taken to prevent further outbursts."[5]

The record before us does not contain a statement by trial counsel explaining the reasons for the actions he took, including the decision not to introduce or rely upon additional evidence regarding appellant's mental health history at the punishment hearing. Since the record is silent as to counsel's strategy, we may not find deficient performance unless the conduct appellant now challenges was so outrageous that no competent attorney would have engaged in it. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Because the record is silent as to trial counsel's investigative efforts and choices regarding what information from appellant's record to introduce at trial, we cannot conclude that trial counsel furnished ineffective assistance. On this record, appellant has not shown that trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. We overrule appellant's third issue.

---

[5] Appellant presented an affidavit in support of his motion for new trial in which he attested that he had been hospitalized for mental health disorders and diagnosed with bipolar disorder, anxiety, ADHD, and insomnia and was taking various medications for these conditions. He also attested that he raised this issue with his trial attorney but "it was not presented to the judge." There is no evidence on this record that the trial court was presented with appellant's motion and the affidavit, as discussed below, but even if it were, we cannot say on this record that this information, without more, provided the trial court with sufficient facts from which it could reasonably conclude that, but for counsel's alleged failures, a reasonable likelihood exists that the outcome of his trial would have been different because the affidavit does not reveal what investigative steps counsel took, what conclusions he may have subsequently drawn, how severe appellant's mental health disorders were, or whether appellant's mental health history would be a mitigating factor in his punishment.

## IV.    Motion for New Trial Not Presented to Trial Court

In his fourth and final issue, appellant asserts that the trial court abused its discretion in failing to grant appellant's motion for new trial and allowing the motion to be overruled by operation of law. Appellant asks this court to reverse and remand the case for a new trial or for a new punishment hearing. Alternatively, appellant asks us to abate the appeal and remand the case for a hearing on the motion for new trial. The State contends that the trial court did not abuse its discretion in allowing the motion for new trial to be overruled by operation of law because the motion was never presented to the trial court.

A defendant must present a motion for new trial to the trial court within ten days of filing it. Tex. R. App. P. 21.6. "The purpose of the presentment rule is to put the trial court on actual notice that a defendant desires the trial court to take some action on the motion for new trial such as a ruling or a hearing on it." *Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009). "Presentment" must be apparent from the record. *Gardner v. State*, 306 S.W.3d 274, 305 (Tex. Crim. App. 2009). Presentment can be shown by such proof as the judge's signature or notation on the motion or proposed order, or a docket entry showing presentment or setting a hearing date. *Id.*

Nothing in this record shows appellant ever presented his motion to the trial court. *See id.* The only relevant docket entry shows the motion was filed, but it does not show presentment. *See Longoria v. State*, 154 S.W.3d 747, 762 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) ("Although the final entry on the court's docket sheet states 'Mo. for New Trial filed,' this notation is not sufficient to show presentment."). Without any showing that the trial court actually saw appellant's motion for new trial, a trial court cannot be faulted for allowing a motion for new trial to be overruled by operation of law. *See Gardner*, 306 S.W.3d

13

at 305.

Because appellant did not show that he timely presented his motion for new trial to the trial court, the trial court did not abuse its discretion in allowing the motion to be denied by operation of law or failing to conduct a hearing on the motion. *See id.* at 305–06; *see also Longoria*, 154 S.W.3d at 762–63 ("A trial court cannot abuse its discretion by denying a motion for new trial by operation of law when the motion was not timely presented."). We overrule appellant's fourth issue.

### *Conclusion*

We affirm the judgment of the trial court.


/s/    Frances Bourliot
       Justice


Panel consists of Justices Wise, Bourliot, and Zimmerer.

Do Not Publish — TEX. R. APP. P. 47.2(b).