02-09-390-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO.  02-09-00390-CR

 

 


 
 
 Aaron Clark Wham
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM County
Criminal Court No. 1 OF Denton COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

Appellant
Aaron Clark Wham appeals his 365-day jail sentence assessed by the trial court
after a jury convicted him of committing assault-family violence.  In two issues,
Appellant asserts that the trial court reversibly erred by allowing the State
to admit extraneous bad acts evidence against him in the punishment phase when
the State had not given proper notice of the acts, as required by article
37.07, section 3(g) of the code of criminal procedure.  See Tex. Code
Crim. Proc. Ann. art. 37.07, ' 3(g) (West Supp. 2010).  We
affirm. 

II. 
Factual and Procedural Background

On
February 4, 2009, Appellant filed a pretrial request for notice of the State’s
intent to introduce against him “evidence of an extraneous crime or bad act at
the punishment phase of trial,” pursuant to article 37.07, section 3(g).  On
June 16, 2009, the State notified Appellant in writing that it intended to
offer evidence of “Previous Acts of Violence against [the complainant].”

On
November 9, 2009, Appellant pleaded not guilty to Class A misdemeanor assault
against his wife, and a jury trial ensued.  Viewed in the light most favorable
to the verdict,[2] the evidence reveals that
in the early morning hours of January 1, 2009, Appellant and his wife, the
complainant, resumed an argument they had started the night before.  During the
argument, the complainant stood diagonally from Appellant, who was sitting on
the couch and “very intoxicated.”  Suddenly, Appellant stood up, reared his
head back, and struck the complainant over her left eye with the top of his
head.  The complainant’s laceration began bleeding profusely, and she drove to
the hospital and received seven stitches.  The jury found Appellant guilty of
assault as alleged in the information.

Appellant
elected to have the trial court assess punishment.  The complainant and her
mother testified for the State, and their testimony is discussed below.[3] 
Appellant’s counsel cross-examined both witnesses but did not present a
separate case-in-chief.  In closing argument, Appellant’s counsel emphasized
that Appellant had a problem with alcohol and asked the trial court to assess
some form of alcohol counseling as a condition of community supervision, or in
the alternative, assess “substantially less than 365 days.”  The State asked the
trial court to “consider the victim’s safety in this and assess the maximum
punishment.”  The trial court assessed punishment at 365 days in the county
jail and sentenced Appellant accordingly.

III. 
Discussion

In his
first issue, Appellant asserts that the trial court erred by allowing the State
to introduce extraneous bad acts evidence against him in the punishment phase
when it had not given proper notice of any extraneous bad acts, as required by
article 37.07, section 3(g) of the code of criminal procedure.  In his second issue,
Appellant asserts that the trial court’s error was harmful and requires that he
receive a new punishment trial.

The
State does not address the sufficiency of its notice, arguing instead (1) that
Appellant waived any error “on most, if not all, of the alleged errors” and (2)
that, “[w]ithout conceding error as to the sufficiency of the State’s notice,”
any error was harmless.  

A. 
Extraneous Offense Evidence in the Punishment Phase

Article
37.07, section 3(a) of the code of criminal procedure provides in pertinent
part,

[E]vidence may be
offered by the state and the defendant as to any matter the court deems
relevant to sentencing, including . . . evidence of an extraneous crime or bad
act that is shown beyond a reasonable doubt by evidence to have been committed
by the defendant or for which he could be held criminally responsible,
regardless of whether he has previously been charged with or finally convicted
of the crime or act.

 

Id. art.
37.07, '
3(a).  Article 37.07, section 3(g) provides:

          On timely
request of the defendant, notice of intent to introduce evidence under this
article shall be given in the same manner required by Rule 404(b), Texas Rules
of Evidence.  If the attorney representing the state intends to introduce an
extraneous crime or bad act that has not resulted in a final conviction in a
court of record or a probated or suspended sentence, notice of that intent
is reasonable only if the notice includes the date on which and the county in
which the alleged crime or bad act occurred and the name of the alleged victim
of the crime or bad act.[4] 

 

Id.
art. 37.07, ' 3(g) (emphasis added). 

The
purpose of the notice provision is to avoid unfair surprise and to enable a
defendant to prepare to answer the extraneous offense evidence.  See Burling
v. State, 83 S.W.3d 199, 202–03 (Tex. App.—Fort Worth 2002, pet. ref’d); see
also Wallace v. State, 135 S.W.3d 114, 120 (Tex. App.—Tyler 2004, no
pet.).  Courts have carved out exceptions to the rule so that the notice need
not specify exact counties.  See Nance v. State, 946 S.W.2d 490,
493 (Tex. App.—Fort Worth 1997, pet. ref’d) (holding that section 3(g) was
satisfied by State’s notice listing city and state); see also Wallace,
135 S.W.3d at 120.  Courts have also given the State leeway in specifying exact
dates.  Wallace, 135 S.W.3d at 120; Burling, 83 S.W.3d at 203
(holding that variation of six weeks between date alleged in notice and that
presented at trial is reasonable).  We review a trial court’s decision to admit
extraneous offense evidence for abuse of discretion.  See Sanders v.
State, 191 S.W.3d 272, 276 (Tex. App.—Waco 2006, pet. ref’d), cert. denied,
549 U.S. 1167 (2007); Owens v. State, 119 S.W.3d 439, 444 (Tex.
App.—Tyler 2003, no pet.); see also McDonald v. State, 179 S.W.3d 571,
576 (Tex. Crim. App. 2005) (applying abuse of discretion standard to a rule
404(b) notice challenge).  In the absence of reasonable notice, however, a
trial court abuses its discretion by admitting extraneous offense evidence.  Roethel
v. State, 80 S.W.3d 277, 283 (Tex. App.—Austin 2002, no pet.).

B. 
Preservation of Error

To
preserve a point for appellate review, a party must have presented to the trial
court a timely objection stating the specific grounds for the ruling sought,
unless the specific grounds were apparent from the context.  Tex. R. App. P.
33.1(a)(1); see Berry v. State, 233 S.W.3d 847, 856–57 (Tex. Crim. App.
2007).  Further, the trial court must have ruled on the objection, either
expressly or implicitly, or the complaining party must have objected to the
trial court’s refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State,
138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  Here, Appellant focuses on five
instances in which he alleges that the trial court improperly admitted
extraneous bad acts evidence.  We will address each instance in turn.   

1. 
Testimony of the Complainant’s Mother

       In
this instance, the State asked the complainant’s mother, Luann McCormick, “Has
this been the first incident of violence against your daughter?”[5] 
Appellant immediately objected that he had not gotten proper 404(b) notice, and
the State responded, “Our 404(b) notice included prior acts of violence against
[the complainant].”  Appellant’s counsel replied,  

And that’s true, Your
Honor, but without specificity as to dates, times, possible locations, it’s
impossible for the Defense to prepare for such an accusation.  I believe the
404(b) notice the State provided just simply said prior acts of violence
against [the complainant].  It did not list a county, it did not list an
offense date, or “on or about” language, or anything to put the Defense on
notice.[6]

 

The
trial court overruled the objection, and McCormick testified that Appellant
took the spark plugs out of the complainant’s car so she could not drive and
smashed the car windows.  She also testified that Appellant “would get in [the
complainant’s] face . . . it was a –– a very confrontational, face-to-face-type
thing.” During McCormick’s testimony, the trial court stated, 

[B]ecause there was
an objection as to any other abuse as to [the complainant], and I didn’t hear
anything of that nature.  So after hearing that, I’m — I’m going to sustain the
Defense’s objection to that and not consider the answer to that one question,
because it was — anyway, I didn’t hear anything.  I just want to make sure the
record is clear about that, and the Court has not considered any other acts of
violence against [the complainant] because I didn’t hear anything.    

 

Because
the trial court sustained Appellant’s objection, Appellant did not obtain an
adverse ruling upon which to complain on appeal.  See Geuder v. State,
115 S.W.3d 11, 13 (Tex. Crim. App. 2003) (holding that an objection must be
timely, specific, pursued to an adverse ruling, and with two exceptions,
contemporaneous).  Because the trial court provided Appellant with the requested
relief, nothing is preserved for review. 

2. 
The Complainant’s Testimony

a.    The Cruise Ship 

During
this exchange, the State asked the complainant, “About how soon after y’all
started dating did things turn physical, in terms of any physical acts of
violence against you?”  Without objection, the complaint testified that she and
Appellant had taken a cruise in 2004 or 2005 and that one night she found
Appellant “passed out on the deck.”  When the complainant tried to wake Appellant,
he jumped up and threw her against the wall, and she almost fell over the
boat’s railing.  The complainant testified, “He got me cornered on the wall. 
He was choking me.  Some random guy had to pull him off of me, and eventually,
the police officers on the cruise ship took him away.”  

Appellant
asserts that because he had objected to similar testimony earlier and because
trial was to the court, he did not have to repeat his objection in light of
rule of evidence 103(a)(1).  See Tex. R. Evid. 103(a)(1) (“When the
court hears objections to offered evidence out of the presence of the jury and
rules that such evidence be admitted, such objections shall be deemed to apply
to such evidence when it is admitted before the jury without the necessity of
repeating those objections.”).  Appellant cites no authority in support of his
argument that rule 103(a)(1) applies to bench trials.  Moreover, the trial
court sustained his previous objection, and the subject matter of the
complainant’s testimony differed from her earlier testimony.  Thus, Appellant waived
any complaint on appeal by not objecting.  See Mendez, 138 S.W.3d at
342.

b.  The Hotel

Here,
the State asked the complainant when “the next physical act occurred,” and she
responded that one summer she and Appellant had rented adjoining hotel rooms
with her sister and her sister’s husband.  When the complainant testified, “I
heard [Appellant] talking about wanting to get some coke.  And —,” the following
dialogue occurred: 

[Defense Counsel]: 
I’m going to object, Your Honor, first, to 404(b), any kind of mention of
illicit drug or drug use.  There’s nothing in the 404(b) notice about that.  

 

THE COURT:  Okay.

 

[Defense Counsel]: 
Secondly, I would renew my objection I made to the prior witness, about prior
acts of violence of [the complainant] not being specifically defined or laid
out in the 404(b) notice.

 

THE COURT:  And I’ll
sustain the objection as to the coke, the drugs.

 

[State]:  But the
prior acts of violence are still okay to go into?

 

THE COURT:  Yes.

. . . .

 

                    Q.
[State]:  [D]id y’all get into an argument?

 

A. [Complainant]:  We
got into an argument.  We went back — we went back over to our room.  We were
arguing.

 

[Defense Counsel]: 
May I have a running objection, Your Honor, to any further acts so that I don’t
— if they go into any further acts, I don’t want to have to keep objecting.

 

THE COURT:  On this
occasion, yes.

 

[Defense Counsel]: 
Just for this witness, Judge?

 

THE COURT:  Yes, for
this occasion.

 

[Defense Counsel]: 
But we can consider the prior ruling overruled?  As to prior acts of violence,
my objection to that under 404(b) was overruled?

 

THE COURT:  Yes. 
Yes.  Yes.  

 

[Defense Counsel]: 
Thank you, Your Honor.

 

THE COURT:  As to
this one occurrence.  

 

The
complainant then testified that Appellant was not “so much physical with
[her].  He tried to keep [her] from leaving the room.”  The complainant further
testified that she eventually left the room but that when she returned, “[t]he
room was a mess.  There was blood on the sheets.  The phone was broke.  It was
just like a bomb went off in there.”  At this point, the trial court
interposed, “[I] want to make the record clear from what I’ve just heard, I
didn’t hear any prior acts of violence against her, so the Court’s not
considering that. . . .  The last incident that I just heard.”  Because the
trial court, acting as the factfinder, specifically stated that he did not hear
any evidence regarding prior acts of violence in this instance, Appellant has
no complaint on appeal that the trial court abused its discretion by
considering such evidence. 

c.  The Neighbor’s Home 

In
this exchange, the State asked the complainant whether Appellant had physically
confronted her after the hotel incident but before the most recent offense. 
The complainant responded, “Yes . . . There’s been two,” and when the State
asked the complainant to describe the first incident, defense counsel stated,
“Same objection to 404(b), about lack of specificity in the notice the State
provided.”  The trial court overruled the objection “temporarily,” explaining
that it would hear the evidence and then rule.  The complainant proceeded to
testify that she and Appellant went to a party at a friend’s house in the summer
of 2008, that Appellant got “very drunk,” and that she had to drive him home. 
In the car, Appellant yelled at her and told her to let him out of the car. 
When Appellant opened the passenger side door, the complainant stopped, and
Appellant got out of the car.  Back at home, the complainant asked a neighbor
to find Appellant and pick him up.  When the neighbor arrived with Appellant,
Appellant pushed the complainant and told her he was going to kill her.  The
neighbor had to pull Appellant off of the complainant.   

          The
State asserts that Appellant failed to preserve error because he did not reurge
his objection and because the trial court did not make a final ruling.  See
Mendez, 138 S.W.3d at 341.  Appellant asserts that the trial court’s
“temporary” ruling operated as a final decision because the testimony “could
not conceivably bear on whether admission of the testimony would violate the
‘procedural’ notice requirements of [a]rticle 37.07, section 3(g).”  Appellant
did not present this argument to the trial court.  To the extent Appellant
argues that the trial court implicitly overruled his objection, we disagree.  Cf.
Ramirez v. State, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991) (holding that
trial court’s unqualified directive to “Let [the witness] answer the question”
constitutes an implicit adverse ruling which preserves error).  Here, the trial
court specifically made a “temporary” ruling.  Because Appellant did not obtain
a definitive adverse ruling, he waived his complaint that the trial court
abused its discretion by admitting this testimony.  See id. (holding
that an adverse ruling must be “conclusory,” that is, “it must be clear from
the record the trial judge in fact overruled the defendant’s objection or
otherwise error is waived”). 

d. The Complainant’s Apartment

          In
this instance, the State asked the complainant about an August 23, 2009 incident,
which occurred after the assault for which Appellant was on trial.  Following
the complainant’s testimony that “one night she and her children were in their
apartment,” the following dialogue occurred:

[Defense Counsel]:
I’m going to object again, Your Honor, under 404(b), lack of specificity about
this incident.  

 

THE COURT:  Okay.  It’s
a filed case, though. 

 

[Defense Counsel]: 
Yes, Your Honor, but the State didn’t give me any notice about their intent to
use it in any kind of punishment here before the Court today, or the case in
chief.  

 

THE COURT: Okay. But
you knew there were prior offenses, and you knew that there was a case pending
against your client. 

 

[Defense Counsel]:  I
didn’t for – I will – I did know that he was arrested, bonded out, and the case
was in Intake.  I didn’t know it had been filed until today, Your Honor.  But I
did know there was a case in the District Attorney’s file.  The District
Attorney had the case in their Intake Department.  I didn’t know it was filed
until – it was either Your Honor or the DA told me that today, that it was – 
that it’s been filed. 

 

THE COURT:  But you
were aware that he had been arrested and charged?

  

[Defense Counsel]:  I
was well aware of the charges, yes, your Honor.  I was not aware of the State’s
intent to use that in Punishment. 

 

THE COURT: So your
client was full[y] aware of the charges against him?

 

[Defense Counsel]: I
assume he was, yes.  I mean, he was arrested for them, so I would assume he
was. 

 

THE COURT: Okay. 
I’ll overrule the objection. 

 

The
complainant then testified that around 10:30 p.m. on August 23, 2009, she had
been sitting outside on her second-floor balcony when she saw Appellant outside
her apartment.  When the complainant went inside, she found Appellant on the
first floor.  He appeared to be intoxicated, and he was mumbling that he wanted
to see their two children.[7]  When the complainant
told Appellant to leave, he raised his hand and moved toward her.  “And the
next thing I kn[e]w, I was on the ground, my tooth had come out, and I had a
scratch on my chin.”  The complainant testified that Appellant was gone by the
time she got up, that she called the police, and that she filed charges against
Appellant. 

The
State asserts generally that Appellant waived any error because he failed to
renew his objection or request a running objection at any time during the
complainant’s testimony about this incident.  See Geuder, 115 S.W.3d at
13 (holding that an objection must be made each time inadmissible evidence is
offered unless the complaining party obtains a running objection or requests a
hearing outside the jury’s presence); Ethington v. State, 819 S.W.2d 854,
859–60 (Tex. Crim. App. 1991) (holding that appellant did not preserve error
because he did not object to the witness’s continued detailed testimony
regarding extraneous robbery).  Appellant contends that he “lodge[d] a valid
objection to all the testimony he deem[ed] objectionable on a given
subject at one time out of the jury’s presence,” an option sanctioned in Ethington,
819 S.W.2d at 859.  

The
record demonstrates that the trial court and both parties understood Appellant
to be objecting to the trial court’s consideration of the August 2009 assault
in its entirety.  Pena v. State, 285 S.W.3d 459, 464 (Tex. Crim. App.
2009) (“To avoid forfeiting a complaint on appeal, the party must ‘let the
trial judge know what he wants, why he thinks he is entitled to it, and to do
clearly enough for the judge to understand him at a time when the judge is in
the proper position to do something about it.’”) (quoting Lankston v. State,
827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).  A running objection was not
needed because, as construed in context, the trial court’s ruling applied
globally to all testimony related to the August 2009 assault, which the
complainant described succinctly. The complainant testified to background
information between the objection and her description of the assault.  After
describing the assault, the complainant testified that she called the police
and that charges were filed against Appellant.  The State does not specify a
point at which Appellant waived error by not reurging his objection.  Cf.
Ethington, 819 S.W.2d at 859–60 (holding that when counsel objected “only
to the first question” and there were three more pages of questions and answers
on the same subject, “[i]t is clear from the context of this testimony further
objection was necessary in some form”).  We conclude that Appellant properly
preserved error in this instance.  Because Appellant did not
preserve error as to his complaints regarding the other bad acts evidence, the
remainder of our analysis relates only to this August 2009 incident.  

C. 
Sufficiency of the Notice 

Although
the State does not directly address the sufficiency of its notice, it
acknowledges in the context of the August 2009 incident that a defendant’s
awareness that the State filed assault charges against him is not equivalent to
article 37.07, section 3(g) notice.[8]  See Graves v. State,
No. 02-05-00430-CR, 2006 WL 3114451, at *3, *7 (Tex. App.—Fort Worth Nov. 2,
2006, no pet.) (mem. op., not designated for publication) (citing Hernandez
v. State, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005)); Sarringar v.
State, No. 02-02-00102-CR, 2003 WL 861698, at *4 (Tex. App.—Fort Worth Mar.
6, 2003, pet. ref’d) (mem. op., not designated for publication) (“Article
37.07, section 3(g) mandates that the State provide timely notice, not of the
existence of extraneous offenses, but of its intent to offer such evidence.”); see
also Loredo v. State, 157 S.W.3d 26, 28 & n.3 (Tex. App.—Waco 2004,
pet. ref’d) (holding that an open file policy cannot substitute for a request
for notice of State’s intent to use extraneous bad acts evidence).

The
State also acknowledges that any article 37.07, section 3(g) notice regarding a
pending case against Appellant was required to include the date, county, and
name of the alleged victim to be considered reasonable.  Because the State’s
notice of intent to offer evidence of “Previous Acts of Violence against [the
complainant]” did not list specific acts of violence or any  associated dates
or counties, the State’s notice was insufficient.  See Tex. Code Crim.
Proc. Ann. art. 37.07, ' 3(g); Roethel, 80
S.W.3d at 280–81 (holding State’s notice unreasonable when it stated generally
that appellant committed aggravated sexual assault of his sister when she was a
child); James v. State, 47 S.W.3d 710, 714 (Tex. App.—Texarkana 2001, no
pet.) (holding that notice lacking “even a general statement about the time the
acts occurred” was inadequate); Brown v. State, No. 02-03-00307-CR, 2004
WL 1067774, at *2 (Tex. App.—Fort Worth May 13, 2004, no pet.) (mem. op., not
designated for publication) (holding that when no date is alleged in the
State’s notice, the notice is unreasonable).    

D. 
Abuse of Discretion

Article
37.07, section 3(g) does not discuss the consequences of the State’s failure to
provide the required notice, but “[t]he logical and proper consequence of
violations of section 3(g) is that the evidence is inadmissible.”  Roethel,
80 S.W.3d at 281; see Camacho v. State, No. 04-06-00713-CR, 2007 WL
3270766, at *3 (Tex. App.—San Antonio Nov. 7, 2007, no pet.) (mem. op., not
designated for publication) (holding that the State’s notice of extraneous acts
was unreasonable and that therefore admission of the evidence was error). 
Because the State did not provide Appellant with proper notice, the trial court
abused its discretion in overruling Appellant’s objection and allowing the
State to introduce evidence regarding the August 2009 assault.  See Roethel,
80 S.W.3d at 281; James, 47 S.W.3d at 714; see also Brown,
2004 WL 1067774, at *2.  Accordingly, we sustain this portion of Appellant’s
first issue.

E. 
Harm Analysis

          We
must next determine whether the error was harmful.  “The admission of an
extraneous offense into evidence during the punishment phase when the State
failed to provide notice required by statute is non-constitutional error.”  Gonzalez
v. State, 337 S.W.3d 473, 485 (Tex. App.—Houston [1st Dist.] 2011, pet.
ref’d); Ruiz v. State, 293 S.W.3d 685, 695 (Tex. App.—San Antonio 2009,
pet. ref’d); see McDonald, 179 S.W.3d at 578 (assessing harm for failure
to give notice under rule 404(b) in accordance with rule of appellate procedure
44.2(b)); Hernandez, 176 S.W.3d at 825 (analyzing harm in failure to
provide 404(b) notice under rule 44.2(b) and “find[ing] helpful” the article
37.07, section 3(g) test for harm set forth in Roethel).[9] 
An appellate court may reverse a judgment of punishment based on a
non-constitutional error only if that error affected the defendant’s
substantial rights.[10]  Tex. R. App. P.
44.2(b).  

To
determine harm in light of the purpose of article 37.07, section 3(g)—to avoid
unfair surprise and enable the defendant to prepare to answer the extraneous
misconduct evidence—we must analyze whether and how the notice deficiency
affected the appellant’s ability to prepare for the evidence.  Apolinar,
106 S.W.3d at 414; Roethel, 80 S.W.3d at 281–82; Graves, 2006 WL
3114451, at *5.  Specifically, we examine the record to determine whether the
deficient notice resulted from prosecutorial bad faith or prevented the
defendant from preparing for trial.  Roethel, 80 S.W.3d at 282.  In
determining the latter, we will look at whether the defendant was surprised by
the substance of the testimony and whether that affected his ability to prepare
cross-examination or mitigating evidence.[11]  Id.  “A
defendant may demonstrate surprise by showing how his defense strategy might
have been different had the State explicitly notified him that it intended to
offer the extraneous-offense evidence.”[12]  Allen v. State,
202 S.W.3d 364, 369 (Tex. App.—Fort Worth 2006, pet. ref’d) (discussing rule
404(b) notice and citing Hernandez, 176 S.W.3d at 826).  Error in
admitting evidence in violation of a notice requirement does not have an
“injurious” effect on the verdict if the defendant was not surprised by the
evidence.  Hernandez, 176 S.W.3d at 825 (holding that evidence admitted
in violation of rule of evidence 404(b)’s notice requirement is not harmful
error if defendant not surprised by evidence); Roethel, 80 S.W.3d at 281–82.


          In
his opening brief, Appellant asserts that the trial court’s punishment decision
was “substantially swayed” by the “erroneous admission into evidence, and
subsequent consideration of, the testimony elicited by the State concerning
Defendant’s alleged commission of extraneous acts of violence against [the
complainant].”  See Kotteakos, 328 U.S. at 765 (“[I]f one cannot say,
with fair assurance . . . that the judgment was not substantially swayed by the
error, it is impossible to conclude that substantial rights were not
affected.”).   In support, Appellant cites to the trial court’s statements at
sentencing: 

          Looking
over the criminal history that I’ve been given here, you – you have – you had
some serious issues here at the start of this century.  Three convictions for
violation – or burglary of a vehicle, one for criminal mischief, a felony for
burglary, and two felonies for delivery of a controlled substance.  Then you
came back in, in ’07, with the striking an unattended vehicle offense.  You
were placed on probation there, and then I heard that revocation in August. 
And then after that is when you’re accused of an additional assault against
this same victim in this case.  There’s some serious issues here in my
mind.  Looks like there’s some alcohol issues. . . . [S]entence of 365 days.  

 

As a
sister court has explained, however, “focusing on the degree of prejudice
created by the erroneous admission of the evidence is a different harm analysis
employed for violations of the rules of evidence concerning relevancy, and is
not appropriate here where our inquiry is limited to the harm caused by the
State’s inadequate notice.”  Camacho, 2007 WL 3270766, at *4 (citing Hernandez,
176 S.W.3d at 824–25); see Roethel, 80 S.W.3d at 281–82
(explaining same); Graves, 2006 WL 3114451, at *5–6.  Thus, we do not
consider the trial court’s comments in assessing harm in this instance.

In
his reply brief, Appellant asserts that “[g]iven the nature of virtually all of
the testimony erroneously admitted by the Trial Court, Defense counsel would
have had no way of ‘knowing’ whether the State knew about these alleged events,
much less whether the State knew about them and intended to introduce testimony
concerning them into evidence.”  As to the August 2009 assault, however, the
record demonstrates otherwise.  

On
September 25, 2009, Appellant filed a motion for continuance asking that his
October 2, 2009 trial setting be continued to a later date and explaining that 

          Defendant
was arrested for the offense of Assault Causes Bodily Injury/Family
Violence on or about September 24, 2009.  In the interest of justice,
Attorney respectfully requests additional time to prepare to defend against the
new allegations in a potential punishment phase at trial.[13]

 

The
trial court granted Appellant’s motion, and trial began on November 9, 2009. 
When the State introduced evidence of the August 2009 assault, Appellant’s
counsel explained to the trial court that he was “well aware of the charges”
but that he was “not aware of the State’s intent to use that in Punishment.”   

It
“strains credulity,” however, to think that Appellant was surprised by the
substance of the complainant’s testimony or that the lack of formal notice
affected his ability to prepare for cross-examination, defend against her
testimony, or to present mitigating evidence.  See Hernandez, 176 S.W.3d
at 826 (holding that “it strains credulity” to think that the defendant “was
not on notice that the State intended to use his six recorded statements as
part of its evidence or that he had not prepared to defend against their use.”). 
Although Appellant asserts that, had he been provided notice, “he would have
been enabled to investigate, and to acquire rebuttal witnesses (other than
Defendant),” trial court documents demonstrate that, as to the August 2009
incident, Appellant requested (and was granted) a continuance of approximately one
month for these purposes.  That Appellant was not surprised by the substance of
the complainant’s testimony is further supported by the fact that Appellant did
not request a continuance or even a short recess to prepare for
cross-examination.  Cf.  Graves, 2006 WL 3114451, at *6, *7 n.15
(concluding that Graves was harmed by insufficient extraneous offense notice in
part because counsel specifically requested that his cross-examination of the
witness be postponed until he had obtained his notes and files); see McDonald,
179 S.W.3d at 578 (concluding in part that no harm resulted from lack of notice
because if defendant had been legitimately surprised, he could have requested a
continuance).  Although Appellant did not cross-examine the complainant about
the August 2009 assault, this seems to have been consistent with his apparent
trial strategy in the punishment phase to blame his actions to a large extent on
his issues with alcohol.  In closing argument, Appellant asked to be placed on
community supervision, stating that “if anything, I think everybody agreed that
alcohol has been a problem in this marriage” and that alcoholism “is something
this Court routinely curtails in people through the use of probation and terms
and conditions of said probation.”  It is difficult to imagine, and Appellant
does not explain, how his defense strategy might have been different had the
State formally notified him that it intended to offer the August 2009
extraneous bad act during punishment.  Thus, we conclude that the error in
admitting the extraneous bad acts evidence without sufficient article 37.07,
section 3(g) notice was harmless, and we overrule Appellant’s second issue.  See
Tex. R. App. P. 44.2(b). 

IV. 
Conclusion

Having
sustained Appellant’s first issue in part but having overruled his second issue,
we affirm the trial court’s judgment.

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER, WALKER, and GABRIEL, JJ.

 

WALKER,
J. concurs without opinion.  

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  September 22,
2011








 









[1]See Tex. R. App. P. 47.4.





[2]See Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  Because Appellant does
not challenge the sufficiency of the evidence, we only briefly set forth the
evidence presented at trial.





[3]The State also introduced
Appellant’s prior judgments, reflecting three convictions for burglary of a
motor vehicle, one conviction for criminal mischief, one conviction for
burglary of a building, two convictions for delivery of a controlled substance,
and one conviction for driver’s duty on striking highway fixtures.





[4]Rule 404(b) provides in
relevant part that other-crimes evidence may be admissible for limited, non-character
conformity purposes provided that the prosecution gives the accused reasonable
notice in advance of trial of its intent to use this evidence during its
case-in-chief.  Tex. R. Evid. 404(b).





[5]Appellant and the
complainant had been married approximately five and a half years at the time of
the November 2009 trial.





[6]Although Appellant referenced
rule 404(b) rather than article 37.07, section 3(g), he discussed the substance
of article 37.07, and his written notice request cited article 37.07, section
3(g).  The record indicates that the trial court understood Appellant was
referring to article 37.07 notice.  Thus, Appellant’s objection was
sufficiently specific.  See Apolinar v. State, 106 S.W.3d 407, 414 (Tex.
App.—Houston [1st Dist.] 2003) (reaching similar conclusion), aff’d on other
grounds, 155 S.W.3d 184 (Tex. Crim. App. 2005).





[7]At that time, the couple’s
divorce was pending, and the complainant had custody of their two children. 
Although Appellant had visitation rights, this was not a scheduled visit.  





[8]The court of criminal
appeals has held, however, that “under some circumstances, when delivered
shortly after a defendant’s request, witness statements that describe uncharged
misconduct can constitute reasonable notice [under Rule 404(b)].”  McDonald,
179 S.W.3d at 576 (citing Hayden v. State, 66 S.W.3d 269, 272 (Tex.
Crim. App. 2001)).





[9]The court of criminal
appeals’s reasoning is applicable here because rule 404(b) is incorporated by
reference into the provisions of article 37.07, section 3(g) of the code of
criminal procedure.  See Gonzalez, 337 S.W.3d at 485 (applying harm
standard articulated in Hernandez to analyze harm under article 37.07, ' 3(g)).





[10]“A substantial right is
affected when the error had a substantial and injurious effect or influence in
determining the jury’s verdict.”  King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750,
776 (1946)); Gonzalez, 337 S.W.3d at 485.





[11]Appellant does not assert
that the State acted in bad faith, and our harm analysis is not based on that
component of the Roethel test.





[12]As Appellant points out,
however, the burden to demonstrate whether the appellant was harmed by a trial
court error does not rest on either party.  See Coble v. State,
330 S.W.3d 253, 280 (Tex. Crim. App. 2010); Umoja v. State, 965 S.W.2d
3, 11–12 (Tex. App.—Fort Worth 1997, no pet.).





[13]This motion was filed
approximately three months after the State had filed its article 37.07, section
3(g) notice.